UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

MARKET DEVELOPMENT
CORPORATION,

        Plaintiff,

v.                                 CASE NO. _____

PARTNERSHIP 97, LTD,
a Florida limited partnership;
CLB, INC., a Florida corporation;
AMA GAINESVILLE INVESTMENTS
FOUR, LLC, a Florida limited liability
Company; and ALEX I. SKOBEL,
a Florida resident,

        Defendants.
_____/

## COMPLAINT

    Plaintiff, Market Development Corporation ("MDC" or "Plaintiff"), by and through its undersigned counsel, sues Defendants, Partnership 97, Ltd. ("P-97"), CLB, Inc. ("CLB"), AMA Gainesville Investments Four, LLC ("AMA-4"), and Alex I. Skobel ("Skobel"), and respectfully alleges as follows:

### PARTIES AND JURISDICTION

    1.      Plaintiff MDC is a Georgia corporation, with its principal place of business in the State of Georgia at 4200 Northside Parkway, N.W., Building Two, Suite 200, Atlanta, Georgia 30327.

    2.      Defendant P-97 is a Florida limited partnership with its general partner being Defendant CLB. P-97's principal place of business is 5517 S.W. 69th Terrace, Gainesville,

Alachua County, Florida, 32608.  The partners that comprise P-97 reside in the State of Florida or in states other than Georgia.

      3.      Defendant CLB is a Florida for profit corporation organized and operating under the laws of the state of Florida, and has its principal place of business at 5517 S.W. 69th Terrace, Gainesville, Alachua County, Florida 32608.  At all times material hereto CLB acted on behalf of P-97 as its general partner.

      4.      Defendant AMA-4 is a Florida limited liability company with its principal place of business at 8819 SW 74th Avenue, Gainesville, Alachua County, Florida 32608.  Defendant Skobel is Defendant AMA-4's managing member who, as set forth above, resides in Alachua County, Florida.  The members of Defendant AMA-4 reside in the State of Florida or in states other than Georgia.

      5.      Defendant Skobel is a Florida resident who resides in Alachua County, Florida.

      6.      This Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1), in that complete diversity of citizenship exists between Plaintiff and the Defendants and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

      7.      Venue is proper in the Gainesville Division of the United States District Court for the Northern District of Florida in that, among other things, the contract at issue in this action was to be performed in Gainesville, Florida, one or more Defendants reside in the Gainesville Division of this District, and all or a substantial part of the events and acts of the parties giving rise to the claims described herein occurred in the Gainesville Division of this District.

      8.      All conditions precedent to the maintenance of each of the causes of action alleged herein have been complied with, have occurred either in fact or by operation of law, or have been waived.

## FACTUAL ALLEGATIONS

9.      Plaintiff MDC is a real estate development company which entered into a sales contract (the "Contract") for the purchase of certain real property located in Alachua County, Florida (the "Property"), as more fully set forth therein, with Defendant P-97, as seller, dated on or about March 2, 2012.  The agreed upon purchase price in the Contract for the Property was $1,500,000.00.   A true and accurate copy of the Contract is attached hereto and incorporated herein by this reference as Exhibit "1."

10.     In accordance wit the terms of the Contract, on or about March 12, 2012, Plaintiff MDC forwarded to Michael Schaaf in Marietta, Georgia, as agent for First American Title Insurance Company ("First American") a copy of the Contract, MDC check no. 2831 in the amount of $10,000 representing the earnest money under the Contract, and an Acknowledgment and Agreement of Escrow Agent for execution.

11.     The above-referenced March 12, 2012 letter was copied to Ms. Alison Cox ("Ms. Cox"), who is the Secretary, Treasurer, Director, and authorized agent of Defendant CLB, the general partner for Defendant P-97.

12.     On or about March 12, 2012, MDC sent by certified mail, return receipt requested, a letter to Defendant P-97 to the attention of Ms. Cox advising that the "Agreement Date" of the Contract is March 2, 2012 and additionally enclosing the fully executed Contract and a copy of check no. 2831 made payable to Michael Schaaf Escrow Account in the amount of $10,000 representing the earnest money under the Contract.

13.     Effective as of July 24, 2012, Plaintiff MDC and Defendant P-97 entered into an Amendment to the Contract (the "Amendment") (hereinafter the Contract and the Amendment will be referred to collectively as the "Amended Contract"), which, among other things, modified

the inspection date set forth in paragraph 5 of the Contract from "the 150th day after the Agreement Date" to "October 17, 2012." A true and accurate copy of the Amendment is attached hereto and incorporated herein by this reference as Exhibit "2."

14. Pursuant to the terms of the Amended Contract, MDC delivered to Michael Schaaf in a letter dated August 2, 2012, an additional ($10,000, MDC check no. 1044) payable to Michael Schaaf Escrow Account, along with the fully executed Amendment, which check represented additional earnest money paid by MDC under the Amendment.

15. On or about October 2, 2012, MDC sent to P-97 a written second amendment to the Amended Contract. Among other things, the proposed second amendment revised the inspection date set forth in paragraph 5 of the Amended Contract from "October 17, 2012" to "December 7, 2012."

16. Prior to MDC drafting and sending the second amendment, Defendant P-97, through its general partner CLB, agreed to all the terms and conditions of the proposed second amendment after extended negotiations and discussions with representatives of MDC, and advised MDC that CLB would execute the second amendment.

17. However, in a subsequent telephone conversation between MDC's representative and Ms. Cox after she had received the proposed second amendment, Ms. Cox confirmed that P-97 had verbally agreed to all the terms and conditions of the proposed second amendment, but claimed that she was being told by another potential buyer of a much larger parcel of land belonging to P-97 (the "AMA-4 Parcel"), which included the Property subject to the Amended Contract, not to sign the second amendment despite the fact that Ms. Cox had already verbally agreed to the terms thereof on behalf of P-97 and CLB, and that she therefore would not sign the second amendment as agreed.

18.     On October 5, 2012, P-97 and AMA-4 entered into a contract for the purchase and sale of the AMA-4 Parcel (the "AMA-4 Agreement"), which included the Property subject to the Amended Contract between MDC and P-97.  A true and accurate copy of the AMA-4 Agreement is attached hereto and incorporated herein by this reference as Exhibit "3."

19.     Paragraph 6(c) of the AMA-4 Agreement provided, among other things, that "Seller will, within 10 days from the Effective Date, deliver to Buyer copies of prior surveys, plans, applications . . . and the following documents relevant to this transaction, underline contracts on portions of the property, prepared for Seller or in Seller's possession . . . ."  Additionally, paragraph 22 of the AMA-4 Agreement entitled "Additional Terms" provided that "[t]his contract is subject to an existing/pending contract covering approximately 3 acres in the Town Center Portion of Brytan, and fronting Archer Road.  This pending contract is for $1,500,000.  A copy will be provided to Buyer within 5 days of the Effective Date herein."  Thereafter, P-97 in fact furnished a copy of the documents comprising the Amended Contract to AMA-4 as required.

20.     Accordingly, at the time AMA-4 purchased the AMA-4 Parcel it had actual notice that P-97 had previously contracted to convey a portion of the AMA-4 Parcel to MDC, and that it was obligated to perform as the seller under the Amended Contract in the same manner and to the same extent P-97 was obligated to perform.

21.     On the same day P-97 and AMA-4 entered into the AMA-4 Agreement, Ms. Cox sent an email to an MDC representative informing MDC that P-97 had entered into the AMA-4 Agreement and that AMA-4 instructed Defendant P-97 not to execute the proposed, agreed upon second amendment to the Amended Contract, purportedly until AMA-4 "reviewed it."  In addition, at that time and thereafter Ms. Cox assured MDC that AMA-4 wanted the Amended Contract to proceed to closing, and that she was meeting with Defendant Skobel, on behalf of

AMA-4, on the following Saturday morning to discuss a variety of things, including the Contract, the Amended Contract and the second amendment with MDC.

22.     After executing the AMA-4 Agreement, Skobel, on behalf of Defendant AMA-4, assured MDC in a telephone conversation that he had only instructed P-97 not to execute any further documents with MDC until such time as he could review the same, as AMA-4 would have to "live by" P-97's commitments to MDC.  Thereafter, to the surprise of MDC, on or about October 15, 2012, Ms. Cox sent an email providing, in relevant part, "not sure what Alex (AMA-4) is going to do but I think he is leaning towards not extending the date. Too late to call because both Sara and I had to be somewhere.  Sorry I did not have better news."

23.     On or about October 29, 2012, MDC notified P-97 that MDC was continuing to work on the requirements for closing the Amended Contract, and that it planned to extend the closing date pursuant to the provisions of Section 8 of the Amended Contract. MDC also requested a draft of the deed to convey the Property, including the survey language for the legal description of the Property, and noted that the deed would need to comply with the provisions of Section 3 of the Amended Contract.  Neither P-97 nor AMA-4 ever responded to this request.

24.     Notwithstanding P-97's prior acceptance of the earnest money escrow arrangement in existence since March, 2012, Defendant P-97 demanded by email on October 30, 2012, to have the earnest money deposited with First American by November 7, 2012.  MDC responded that P-97's demand was improper, as the earnest money had been deposited with Michael Schaaf, who is an authorized agent for First American, and offered to have Mr. Schaaf provide P-97 with an "insured closing" letter.  MDC also noted in its response that the deposits were delivered to Michael Schaaf on a timely basis, that P-97 received written notice each time a deposit was made, and that P-97 made no prior objection to Mr. Schaaf holding the deposit.

MDC then questioned whether P-97 would still demand MDC to move the deposits if it received the insured closing letter.

25.     After receiving no response, an MDC representative inquired again on November 6, 2012 via email to Ms. Cox as to the lack of any response regarding the deposit of the earnest money.   After various responses from MDC and Ms. Cox, Defendants AMA-4 and Skobel forwarded an email to MDC containing a letter dated November 6, 2012, scanned into PDF and allegedly signed by Allison [sic] Cox, as Secretary and Treasurer of Defendant CLB, as the General Partner of Defendant P-97.   The letter provided that P-97 was again objecting to the earnest money being held by Mr. Schaaf, even though he is an agent of First American, and demanding that MDC have the Earnest Money deposited with First American by November 7, 2012 and provide them with dated receipts.

26.     Upon information and belief, the scanned PDF letter referenced immediately above was drafted by or at the direction of Defendants AMA-4 and Skobel.   In fact, Alison Cox's name is misspelled "Allison" on the printed portion of the signature block, and was forwarded by Defendants AMA-4 and Skobel.

27.     Notwithstanding P-97's prior awareness of, and lack of objection to, the existing escrow arrangement in effect since March 2012 and MDC's lack of receipt of any notice validly sent as required by the Amended Contract, on or about November 7, 2012, MDC sent to Ms. Cox via email an escrow agreement with First American in Tallahassee, Florida, executed on behalf of MDC and offering to transfer the escrowed funds upon receipt of the Earnest Money Escrow Agreement executed by P-97.

28.     Ms. Cox never responded to MDC's email of November 7, 2012, never signed and delivered the Earnest Money Escrow Agreement, and the $20,000 remains in escrow to date with Michael Schaaf holding the funds as an agent of First American.

29.     Between November 7, 2012 and November 27, 2012, MDC attempted to contact Ms. Cox on a number of occasions to work towards closing on the Amended Contract, but Ms. Cox was wholly unresponsive.

30.     On November 13, 2012, MDC timely extended the Closing Date pursuant to Section 8 of the Amended Contract for a period not to exceed 90 days, or February 14, 2013.  A true and accurate copy of the MDC extension letter is attached hereto and incorporated herein by this reference as Exhibit "4."

31.     On November 27, 2012, Ms. Cox first informed MDC that P-97 no longer owned the Property, and stated also that the Amended Contract was assigned to Defendant AMA-4 at the closing of the AMA-4 Agreement. Defendant Skobel was copied on this email.  Neither then, nor at any other time has Ms. Cox or any representative of P-97 furnished a copy of an executed assignment of any nature to MDC, as a result of which MDC remains uncertain as to whether any assignment agreement exists between P-97 and AMA-4 with respect to the Amended Contract.   Nevertheless, MDC has never been a party to any assignment agreement, and therefore, despite P-97's purported assignment of the Amended Contract to AMA-4, P-97 and CLB, as P-97's general partner, remain liable for the performance of the Amended Contract. Additionally, on numerous occasions thereafter, P-97 has repeatedly informed MDC that it would not perform as required pursuant to the Amended Contract

32.     The Contract at Section 3 entitled **"CLOSING"** provides with respect to the Deed, as follows:

"Seller shall convey Marketable Title to the Property to Purchaser by delivering to Purchaser a Warranty Deed duly executed, witnessed and notarized (together with any required transfer, documentary or stamp tax declaration thereto). As used herein, 'Marketable Title' means good and marketable fee simple title which is free and clear of all liens, claims, tenancies, defects, encumbrances, encroachments or exceptions of any kind or nature whatsoever and from which will be insured by Purchaser's title insurer at standard rates on American Loan Title Association Owners Policy Form B-1970 without exception (whether general or special) ("ALTA Policy"), other than for ad valorem property taxes for the year of Closing which are not yet due and payable as of Closing.

Moreover, the last sentence of Section 3 of the Amended Contract under "Seller's Affidavit and Other Information" provides: "Seller shall execute and/or provide such other documents as may be required by Purchaser or Purchaser's title insurer to effectuate the purposes of this Agreement and to convey Marketable Title to the Property to Purchaser."

33.     Notwithstanding repeated requests by MDC of Defendant P-97 and subsequently to Defendant AMA-4 to provide evidence of Marketable Title to the Property as defined in the Amended Contract, Defendants P-97 and AMA-4 have never provided such evidence. Upon information and belief, neither P-97 nor AMA-4 have Marketable Title to the Property as defined in the Amended Contract, and both have failed to undertake any action to procure and convey Marketable Title or title otherwise satisfactory to MDC, and are for that reason in continuing breach of the obligations of the seller under the Amended Contract.

34.     Section 6 of the Amended Contract entitled "**REPRESENTATIONS**" provides, among other things, that "Seller represents and warrants to Purchaser as follows:  (i) Seller owns the entire fee simple estate in and to the Property and owns Marketable Title to the Property; (ii) Seller has received no notice of, and there are not any actions, suits or proceedings pending or threatened before or by any judicial or any governmental authority against or affecting Seller or the Property." Defendants P-97, CLB and AMA-4 have breached, and remain in breach of, sub-clauses (i) of Section 6, and P-97 and CLB also remain in breach of sub-clause (ii) of Section 6.

35.     Section 8 of the Amended Contract entitled "**CONDITIONS**" provides, in relevant part, as follows:

> If the conditions in this Section have not been satisfied or performed on or as of the Closing Date or waived in writing by the Purchaser, then Purchaser shall have the right, at its option, to elect one of the following: (i) to terminate this Agreement by notice to Seller given on or before the Closing Date in which event the Earnest Money shall be refunded to Purchaser, and the parties hereto shall have no further rights, duties or obligations under this Agreement (provided, however, if such failure of condition also constitutes a default by Seller under this Agreement including a breach of the representations, warranties and covenants made by Seller),  Purchaser's termination shall be without prejudice to any other rights or remedies of Purchaser hereunder in law or in equity, including the right to exercise the remedies set forth in Section 9 hereof; or (ii) to extend the Closing Date for a period not to exceed ninety (90) days to allow Seller or Purchaser, as the case may be, to satisfy or perform the aforesaid conditions (and if not satisfied or performed prior to the expiration of such ninety (90) day period, Purchaser may elect the provisions of subclause (i) above.

Pursuant to Section 8 of the Amended Contract entitled "**CONDITIONS**," no Defendant has fully performed and observed all covenants and obligations of the Amended Contract before, on or as of the Closing Date, all representations made to MDC are not true and correct in all respects as of the Agreement Date and as of the Closing Date, and none of the Defendants have made any material attempts to honor these obligations imposed upon them under the Amended Contract.

36.     Pursuant to Section 9 of the Amended Contract entitled "**DEFAULT**":

> if Seller fails or refuses to perform its obligations under this Agreement or if the sale and purchase of the Property contemplated by this Agreement is not consummated because of Seller's default hereunder, then the Earnest Money shall be refunded to Purchaser, on demand, and neither party shall have any further rights or obligations hereunder, except the Purchaser's right to sue for and obtain specific performance of Seller's covenants and obligations hereunder and Purchaser shall also have the right seek and collect attorneys' fees and costs of litigation incurred by Purchaser in connection with its suit for specific performance.   Notwithstanding the foregoing, in the event Seller makes it impossible or impractical for a court of competent jurisdiction to enforce the remedy of specific performance or otherwise the court is unwilling or unable to grant the remedy of specific performance, the foregoing limitation on Purchaser's remedies shall be null and void and Purchaser shall have the right to seek and

collect actual and consequential damages arising from Seller's breach or default hereunder.

Notwithstanding repeated requests by MDC for P-97 to provide evidence of the executed assignment of the Amended Contract from P-97 to AMA-4 and other documentation needed for MDC to effectuate and proceed to complete the parties' obligations and close pursuant to the terms of the Amended Contract, P-97 has failed and refused to provide MDC with such evidence and has continually instructed MDC to directly contact AMA-4, as the assignee of the Amended Contract.

37.    Notwithstanding repeated written requests by MDC to AMA-4 to provide evidence of the executed assignment of the Amended Contract from P-97 to AMA-4 and other documentation needed for MDC to effectuate and proceed to complete the parties' obligations and close pursuant to the Amended Contract, AMA-4 has failed and refused to provide MDC with such evidence.  Instead, through both words and actions, AMA-4 has made contradictory assertions to MDC at various times; to wit, that it has no knowledge of the Amended Contract, that it had not agreed to or signed any assignments or other documents related to the Amended Contract or MDC, and at other times statements conceding that it had actual notice and possession of the Amended Contract.  Most importantly, following its acquisition of the Property, AMA-4 has repeatedly stated unequivocally to MDC that it refused and would not perform and proceed to closing under the Amended Contract.  As a result of its statements and actions, AMA-4 has thereby repudiated its obligations under the Amended Contract.

38.    On January 17, 2013, MDC sent an email to Defendant P-97, which was copied to all Defendants, clearly setting forth that Defendants P-97 and CLB remained liable under the Amended Contract, that their actions breached the Amended Contract and the implied covenant of good faith and fair dealing, that their actions constituted an anticipatory repudiation of the

Amended Contract, and expressing a preference to work with all Defendants to proceed to closing.

39.     Despite MDC's stated preference to work with all Defendants, Defendants P-97, CLB, and AMA-4 have failed or refused to cooperate with Plaintiff MDC or otherwise take any action to effectuate a closing under the Amended Contract.

40.     Defendants P-97, CLB, and AMA-4 were and are, at all times relevant hereto, manifestly aware that Plaintiff MDC could not consummate a Closing under the Amended Contract absent the cooperation and performance by those Defendants required by the Amended Contract. All Defendants have attempted to frustrate and prevent the closing under the Amended Contract, including, without limitation, by failing or refusing to reasonably cooperate with Plaintiff herein, failing or refusing to make any reasonable attempts to clear title to the Property for delivery to Plaintiff as required by the Amended Contract or otherwise satisfactory to Plaintiff, and failing or refusing to supply to Plaintiff any executed assignment of the Amended Contract from Defendant P-97 to Defendant AMA-4. Defendants P-97, CLB, and AMA-4 have also prevented and frustrated tender of performance by MDC, and have failed and refused to convey the Property in accordance with the terms and conditions of the Amended Contract.

41.     Prior to and at the time of the alleged assignment of the Amended Contract, Defendants P-97, CLB, AMA-4, and Skobel each had actual notice of the Amended Contract and the proposed and agreed upon second amendment prior to the time when Defendant AMA-4 acquired the AMA-4 Parcel from Defendant P-97, which included the Property to be conveyed under the Amended Contract.

42.     Accordingly, by their conduct in breach of the obligations of the Amended Contract as set forth above, Defendants P-97 and CLB can no longer convey the Property to

MDC, and Defendant AMA-4 has repeatedly refused to perform as required by, and in fact repudiated the Amended Contract. As a result, MDC has not, and will not be able to close pursuant to the Amended Contract and obtain title to and ownership of the Property.

## COUNT I
## BREACH OF CONTRACT AGAINST P-97, CLB, AND AMA-4 - DAMAGES

43.    The allegations contained in paragraphs 1-42 are incorporated herein by this reference as if fully restated.

44.    Plaintiff MDC and Defendant P-97, with CLB as its general partner, entered into the Amended Contract.

45.    AMA-4 had actual notice of the existence of the Amended Contract when it agreed to purchase and when it closed on the purchase of the AMA-4 Parcel, which included the Property subject to the Amended Contract. As a result, whether or not P-97 and AMA-4 entered into a formal agreement for the assignment of the Amended Contract to AMA-4, by operation of law AMA-4 has become liable for the consequences of non-performance of the seller's obligations pursuant to the Amended Contract.

46.    Furthermore, despite the conveyance of the Property, or any assignment of the Amended Contract to AMA-4, Defendants P-97 and CLB also remain liable for the consequences of non-performance of the seller's obligations pursuant to the Amended Contract.

47.    At all times relevant, MDC was ready, willing and able to pay the Purchase Price to Defendants P-97 or AMA-4, and perform in accordance with the terms and conditions of the Amended Contract. Plaintiff MDC has fulfilled all or substantially all of its obligations in good faith under the Amended Contract, and has been excused from performing any further obligations under the Amended Contract due to Defendants' refusal to perform and outright repudiation of the Amended Contract.

48.     Defendants P-97 and CLB each acted willfully, wantonly, intentionally and in utmost bad faith to materially breach and repudiate their obligations under the Amended Contract, including, without limitation, claiming that P-97 assigned the Amended Contract to AMA-4 at the closing of the AMA-4 Agreement, failing and refusing to cooperate with MDC to close under the Amended Contract after the AMA-4 Agreement was allegedly signed, failing or refusing to provide Plaintiff MDC with a copy of the executed assignment (if one actually exists) of the Amended Contract from P-97 to AMA-4, and claiming that it has no further responsibility to MDC under the Amended Contract.

49.     Defendant AMA-4, as assignee of the Amended Contract or otherwise being legally bound to perform the Amended Contract, has also acted willfully, wantonly, intentionally and in utmost bad faith to materially breach and repudiate its obligations under the Amended Contract, including, without limitation, claiming that it never accepted the assignment of the Amended Contract at the closing of the AMA-4 Agreement, failing and refusing to cooperate with MDC to perform the parties' obligations as required and close under the Amended Contract after AMA-4 obtained title to the Property, failing or refusing to provide Plaintiff MDC a copy of the AMA-4 Agreement to attempt to falsely demonstrate that AMA-4 never in fact agreed in writing to accept the assignment of the Amended Contract from P-97 to AMA-4, insisting on the execution of a new contract between MDC and AMA-4 despite full knowledge that it was bound by the Amended Contract, and falsely asserting that the Amended Contract was not binding on AMA-4 for various meritless "reasons," such as claiming that the Amended Contract did not comply with the statute of frauds or had expired.

50.     Through their actions and by virtue of the facts set forth above, Defendants P-97, CLB, and AMA-4, have totally frustrated the purposes and benefits to MDC as provided in the

Amended Contract. Accordingly, those Defendants have made it impossible or impractical for this Court to provide complete and adequate relief to MDC through the remedy of specific performance. Rather, under the present circumstances MDC's remedy is to recover damages as provided for in Section 9 of the Amended Contract. Pursuant to Section 9, Defendants P-97, CLB and AMA-4 have caused injury and damages to MDC and are liable to MDC for all actual, compensatory, special, incidental, and consequential damages as allowed by law flowing from the breach described above. The damages suffered by MDC include, but are not limited to, monetary loss suffered by MDC's loss of the benefit of its bargain, loss of its ability to obtain the Property for immediate and profitable use by MDC in the manner known to the Defendants P-97, CLB and AMA-4, as well as for the substantial sums expended by MDC to perform its obligations under the Amended Contract and the substantial expenditures devoted to planning and implantation for its intended use once title to the Property had been obtained. The damages suffered by MDC and recoverable pursuant to Section 9 of the Amended Contract far exceed the sum of $75,000; in fact, at this time MDC's monetary losses exceed $1,000,000.00 In addition, Defendants P-97, CLB and AMA-4 are liable for prejudgment interest, MDC's reasonable attorneys' fees, expenses, and costs of litigation.

WHEREFORE, Plaintiff hereby requests that the Court award MDC damages against Defendants P-97, CLB, and AMA-4, jointly and severally, including, prejudgment interest, MDC's reasonable attorney's fees, expenses, and costs of litigation.

## COUNT II
## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH
## AND FAIR DEALING AGAINST DEFENDANTS P-97, CLB, AND AMA-4

51.   The allegations contained in paragraphs 1-50 above are incorporated herein by this reference as if fully restated.

52.     Defendants P-97, CLB, and AMA-4 have breached the implied covenant of good faith and fair dealing for which each is obligated to Plaintiff under the Amended Contract pursuant to Florida law.   As set forth above, Defendants P-97, CLB and AMA-4 have breached multiple sections of the Amended Contract, including, without limitation, Sections 3, 8, 9, and 11, and the implied covenant of good faith and fair dealing to Plaintiff with respect to the obligations set forth therein.   In fact, Defendants P-97, CLB and AMA-4, through conscious and deliberate acts which constitute the bad faith material breaches of the provisions of the Amended Contract set forth above, have failed or refused to discharge their contractual responsibilities, which has unfairly frustrated the Amended Contract's purpose and disappointed MDC's expectations.

53.     Defendants P-97, CLB and AMA-4's actions in breach of the implied covenant of good faith and fair dealing have deprived MDC of the benefits of the Amended Contract, and as a result have caused injury and damages to MDC as particularly described above.   MDC is also liable for prejudgment interest, MDC's reasonable attorneys' fees, expenses, and costs of litigation.

WHEREFORE, Plaintiff hereby demands that the Court award MDC damages as set forth above against Defendants P-97, CLB and AMA-4 jointly and severally, including prejudgment interest, MDC's reasonable attorney's fees, expenses, and costs of litigation.

## COUNT III
## TORTIOUS INTERFERENCE WITH CONTRACT
## AGAINST DEFENDANTS SKOBEL AND AMA-4

54.     The allegations contained in paragraphs 1-53 are incorporated herein by this reference as if fully restated.

55.     At all material times, Plaintiff MDC had a contract with Defendants P-97, and its general partner, CLB, which is set forth in the Amended Contract.

56.     Defendant Skobel, individually and as President, Managing Member, and authorized representative of Defendant AMA-4, had actual knowledge of the Amended Contract before, on or after the formation date of AMA-4, and before AMA-4 closed the AMA-4 Agreement which included the purchase of the Property subject to the Amended Contract.

57.     Defendant Skobel, individually and as President, Managing Member, and authorized representative of Defendant AMA-4, had actual knowledge of the unsigned second amendment previously agreed to by MDC, P-97 and CLB, before, on or after the formation date of AMA-4, and before AMA-4 closed the AMA-4 Agreement which included the Property.

58.     Defendants AMA-4 and Skobel wrongfully and intentionally procured, induced and coerced Defendants P-97 and CLB to breach the Amended Contract by instructing them not to perform their obligations under the Amended Contract.  Defendants AMA-4 and Skobel also wrongfully and intentionally procured, induced, and coerced Defendants P-97 and CLB to not execute, and to thereby breach the promise to execute the second amendment previously agreed to by MDC, P-97 and CLB.

59.     Defendants AMA-4 and Skobel also wrongfully and intentionally interfered with P-97 and CLB's performance of their obligations under the Amended Contract by inducing or coercing P-97 and CLB to make unfounded objections and subsequent wrongful demands to MDC regarding the earnest money deposited by MDC as required by the terms of the Amended Contract.

60.     By virtue of their actions described above, Defendants Skobel and AMA-4, knowingly and intentionally, without justification or privilege, tortiously interfered with the

Amended Contract, and MDC's rights and interests therein. Furthermore, by virtue of their actions described above, Defendants Skobel and AMA-4, knowingly and intentionally, without justification or privilege, tortiously interfered with the second amendment previously agreed to by MDC, P-97 and CLB, and MDC's rights and interests therein.

61.     Defendants Skobel and AMA-4, for whose benefit he also acted, had actual knowledge of the wrongfulness of Skobel's conduct interfering with MDC's rights under the Amended Contract, and the high probability that injury or damage to MDC would result and, despite that knowledge, intentionally, willfully, wantonly, and with a total disregard for the rights and interests of MDC pursued the course of conduct described above, which resulted in injury and damage to MDC. The officers, directors, or managers of AMA-4 knowingly either participated in, condoned, ratified, consented to, or acquiesced in such conduct.

62.     Plaintiff MDC has suffered damages as particularly described above proximately caused by Defendants AMA-4 and Skobel's tortious interference with Plaintiff MDC's Amended Contract, and the second amendment previously agreed to by MDC, P-97 and CLB, which damages far exceed the sum of $75,000.00, as aforesaid. Additionally, as a result of Skobel and AMA-4's intentional, willful and wanton misconduct described hereinabove, Defendants Skobel and AMA-4 have become liable to Plaintiff for punitive damages.

WHEREFORE, Plaintiff hereby demands that the Court award MDC its compensatory damages as set forth above against Defendants AMA-4 and Skobel, jointly and severally, together with an award of prejudgment interest, MDC's expenses, costs of litigation, and in addition, an award of punitive damages as may be appropriate.

## COUNT IV
## TORTIOUS INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIP AGAINST DEFENDANTS SKOBEL AND AMA-4

63.     The allegations contained in paragraphs 1-62 are incorporated herein by this reference as if fully restated.

64.     At all material times, Plaintiff MDC had an advantageous business relationship with Defendants P-97, and its general partner, CLB.

65.     Defendants AMA-4 and Skobel had actual knowledge of MDC's advantageous business relationship with Defendants P-97 and CLB, including, without limitation, the existence of the Amended Contract.

66.     Defendants AMA-4 and Skobel knowingly and intentionally, without justification or privilege, tortiously interfered with MDC's advantageous business relationship with P-97 and CLB by intentionally procuring, inducing and coercing Defendants P-97 and CLB to cease participation in, and to eventually terminate the advantageous business relationship between them and MDC through its actions set forth in the allegations above.

67.     Defendants AMA-4 and Skobel acted with improper purposes, which were, without limitation, to prevent MDC from taking legal action against P-97 and CLB to prevent the closing under the AMA-4 Agreement, to attempt to wrongfully force MDC to solely renegotiate a totally new and far less advantageous contract to purchase the Property, and to thereby bear infrastructure costs and the expense of other improvements not required of MDC under the Amended Contract, and to attempt to wrongfully force MDC to place additional money in escrow with AMA-4.

68.     Defendants P-97 and CLB would have performed their obligations under the Amended Contract and would have executed the agreed upon second amendment had

Defendants AMA-4 and Skobel not tortiously interfered with Plaintiff's advantageous business relationship with Defendants P-97 and CLB.

69.     Defendant Skobel is the President and Managing Member of Defendant AMA-4.

70.     Defendants Skobel and AMA-4, for whose benefit he also acted, had actual knowledge of the wrongfulness of Skobel's conduct and the high probability that injury or damage to MDC would result and, despite that knowledge, intentionally willfully, wantonly, and with a total disregard for the rights and interests of MDC pursued its course of conduct described above, which resulted in injury and damage to MDC.  The officers, directors, or managers of AMA-4 knowingly participated in, condoned, ratified, consented to, or acquiesced in such conduct.

71.     Plaintiff MDC has suffered injury and damages proximately caused by Defendants AMA-4 and Skobel's tortious interference with Plaintiff MDC's advantageous business relationship with Defendants P-97 and CLB, as more particularly set forth hereinabove. Additionally, as a result of Skobel and AMA-4's intentional, willful and wanton misconduct described hereinabove, Defendants Skobel and AMA-4 have become liable to Plaintiff for punitive damages.

WHEREFORE, Plaintiff hereby demands that the Court award damages to MDC and against Defendants AMA-4 and Skobel, jointly and severally, together with prejudgment interest, MDC's expenses, costs of litigation, and in addition, an award of punitive damages as may be appropriate.

## COUNT V
## ALTERNATIVE CLAIM FOR SPECIFIC PERFORMANCE
## AGAINST DEFENDANT AMA-4

72.     The allegations contained in paragraphs 1-49 and 52 are incorporated herein by this reference as if fully restated.

73.     This is an action for specific performance of the Amended Contract to convey real property located in Alachua County, Florida, for the consideration as set forth in the Amended Contract attached hereto (Exhibits "1" and "2").

74.     Prior to the Closing Date, as extended under the Amended Contract, P-97 through its General Partner, CLB, either assigned the Amended Contract to Defendant AMA-4, or AMA-4 purchased the AMA-4 Parcel, which included the Property to be conveyed under the Amended Contract with actual notice and knowledge of the Amended Contract, and as a result has become bound to perform the obligations of the seller thereunder.

75.     At all times relevant, MDC was and is ready, willing and able to pay the Purchase Price to AMA-4, and perform in accordance with the terms and conditions of the Amended Contract.

76.     Defendant AMA-4 has refused to perform and wrongfully prevented MDC's performance, has prevented tender, has failed or refused to convey the Property or otherwise perform as seller in accordance with the terms and conditions of the Amended Contract, and has otherwise consistently and totally repudiated the Amended Contract.

77.     MDC has fulfilled all of its obligations in good faith under the Amended Contract, and has performed all conditions precedent or they have occurred or been waived.

78.     MDC has no adequate remedy at law.

79.     Pursuant to the Amended Contract, MDC is entitled to an equitable decree of specific performance, together with an award of its recoverable incidental damages, reasonable attorneys' fees and expenses incurred in connection with its suit for specific performance. Plaintiff MDC therefore respectfully requests this Honorable Court to grant specific performance against the Defendant, AMA-4, now holding lawful title to the Property as described in the Amended Contract, and for the additional relief to which it is entitled.

WHEREFORE, Plaintiff hereby requests that the Court grant specific performance of the Amended Contract compelling AMA-4, now lawfully holding title to the Property described in the Amended Contract, to convey title to the Property to MDC, and that the Court enter an award for such additional damages against AMA-4 to which MDC may be entitled, together with MDC's reasonable attorneys' fees and expenses incurred in connection with this action for specific performance.

<u>JURY TRIAL DEMAND</u>

TRIAL BY JURY IS HEREBY DEMANDED ON ALL ISSUES SO TRIABLE.

Respectfully submitted this <u>14th</u> day of February, 2013.

**SMITH, GAMBRELL & RUSSELL, LLP**

<u>/s/ Dana G. Bradford</u>
Dana G. Bradford II
Florida Bar Number 167542
<u>dgbradford@sgrlaw.com</u>
<u>dmsmith@sgrlaw.com</u>
<u>dthall@sgrlaw.com</u>
James H. Cummings
Florida Bar No. 27657
<u>jcummings@sgrlaw.com</u>
<u>dthall@sgrlaw.com</u>
50 N. Laura Street, Suite 2600
Jacksonville, FL  32202
Telephone:     (904) 598-6100
Facsimile:     (904) 598-6203

***Attorneys for Market Development Corporation***