## SALES CONTRACT

THIS AGREEMENT ("Agreement") is made and entered as of the Agreement Date by and among the undersigned seller ("Seller") and the undersigned purchaser ("Purchaser"). As used herein, the "Agreement Date" means the date on which this Agreement, after having first been executed by Purchaser, is duly executed by Seller without alteration or addition and first delivered to and received by Purchaser.

1. **SALE AND PURCHASE.** Subject to the terms and conditions of this Agreement, Seller agrees to sell to Purchaser, and Purchaser agrees to purchase from Seller, that tract or parcel of land located at Archer Road & SW 75th Street, ~~Newberry~~ Fl and as more particularly described or depicted on Exhibit "A" attached hereto and incorporated herein by reference, together with any and all improvements, trees, rights, ways, easements, appurtenances, hereditaments and tenements appurtenant or incident thereto or located thereon, and all right, title and interest of Seller in and to any and all public and private alleys, roads and ways abutting, adjoining or traversing said tract or parcel of land (collectively the "Property");

   *[handwritten margin: RLG 5-12, Gainesville ofzc]*

2. **PURCHASE PRICE AND EARNEST MONEY.** The purchase price for the Property shall be $1,500,000 (the "Purchase Price"). The Purchase Price, less a credit for the Earnest Money, shall be paid by Purchaser to Seller at the Closing by closing attorney's escrow account check or wire transfer of immediately available funds. As used herein, "Closing" means the consummation of the purchase and sale contemplated by this Agreement by the deliveries required under Section 3 hereof, and "Closing Date" means the time and date established under Section 3 hereof when the purchase and sale contemplated by this Agreement is to be consummated, as such date may be extended by mutual agreement of Seller and Purchaser or pursuant to the terms of this Agreement. Within five (5) business days of the Agreement Date, Purchaser agrees to deliver to First American Title Insurance Company ("Escrow Agent") a check in the amount of $10,000 as earnest money (the "Earnest Money"). The Earnest Money is to be held, invested, applied and disbursed in accordance with the terms of this Agreement. If Purchaser shall exercise any right or option to terminate this Agreement, the Earnest Money shall be paid over and refunded to Purchaser in the manner provided herein. At and in the event of the Closing, the Earnest Money shall be paid over to Seller and applied and credited in reduction of the Purchase Price.

3. **CLOSING.** The Closing shall be at the offices of Purchaser (or such other place mutually agreed to by Seller and Purchaser) no later than thirty (30) days after the Inspection Date (as defined in paragraph 5 hereof) or on such earlier date as is designated by Purchaser. On the Closing Date, the Closing shall occur as follows, subject to satisfaction of all of the terms and conditions of this Agreement.

   **Deed.** Seller shall convey Marketable Title to the Property to Purchaser by delivering to Purchaser a warranty deed duly executed, witnessed and notarized together with any required transfer, documentary or stamp tax declaration therefor. As used herein, "Marketable Title" means good and marketable fee simple title which is free and clear of all liens, claims, tenancies, defects, encumbrances, encroachments or exceptions of any kind or nature whatsoever and which will be insured by Purchaser's title insurer at standard rates on American Land Title Association Owner's Policy Form B-1970 without exception (whether standard or special) (the "ALTA Policy"), other than for ad valorem property taxes for the year of Closing which are not yet due and payable as of Closing. For purposes of the warranty deed and other documents to be delivered to Purchaser by Seller at Closing, the legal description of the Property shall be both the legal description by which Seller acquired the Property and the legal description drawn from Purchaser's survey of the Property. Seller shall deliver exclusive possession of the Property to Purchaser at Closing.

   **Seller's Affidavit and Other Information.** Seller shall deliver to Purchaser and Purchaser's title insurer an affidavit dated as of the Closing Date and duly executed and sworn to by Seller in such form and substance required by Purchaser's title insurer in order for Purchaser's title insurer to issue in favor of Purchaser the ALTA Policy in an amount not less than the Purchase Price insuring Marketable Title to the Property. Seller shall deliver to Purchaser such certificates and affidavits, dated as of the Closing Date, addressed to Purchaser and duly executed and sworn to by Seller, as are required under applicable provisions of the United States Internal Revenue Code and income tax regulations, and applicable provisions of Florida law and regulation, to assure Purchaser that income and sales tax withholding is not required. If Seller fails to deliver such certificates and affidavits, then Purchaser shall be entitled to withhold applicable federal and state income and sales taxes pursuant to applicable law and regulation. In addition to all documents and instruments expressly provided for herein, Seller shall execute and/or provide such other documents as may be required by Purchaser or Purchaser's title insurer to effectuate the purposes of this Agreement and to convey Marketable Title to the Property to Purchaser.



Closing Costs and Prorations. Seller shall pay any transfer, documentary or stamp taxes due with respect to the warranty deed by which the Property is conveyed to Purchaser and the commission due to Broker under Section 4 hereof. All state, county and city ad valorem taxes with respect to the Property shall be prorated, based on the amount of such taxes for the calendar year of the Closing, if known, or otherwise, based on taxes for the previous calendar year.

4. BROKERS. Seller and Purchaser acknowledge that Thomas Group Realty, LLC ("Broker") represents Purchaser as broker in connection with the sale of the Property; however, Broker shall be compensated for its services by Seller. Seller shall pay to Broker upon, but only upon, final consummation of the transaction contemplated herein, a commission in an amount equal to 6% of the Purchase Price, payable in cash at Closing. Seller and Purchaser hereby indemnify each other against, and agree to hold each other harmless from, any liability or claim (and all expenses, including attorneys' fees, incurred in defending any such claim or in enforcing this indemnity) for a real estate brokerage commission or similar compensation arising out of or in any way connected with any claimed dealings with the indemnitor and relating to this Agreement or the purchase and sale of the Property.

5. INSPECTION. Purchaser, personally or through agents, employees or contractors, may go upon the Property and over the improvements thereon to make boundary line or topographical surveys and to conduct such soil, engineering, environmental and other tests, investigations, appraisals and analyses of all aspects of the Property as Purchaser deems desirable. In addition to any other conditions provided herein, Purchaser's obligations under this Agreement are subject to and conditioned upon Purchaser's determination, in Purchaser's sole and absolute discretion and on or before the 150th day after the Agreement Date (the "Inspection Date"), that the acquisition and the development of the Property is physically and economically feasible on terms satisfactory to Purchaser. If the foregoing condition is not satisfied or waived in writing by Purchaser on or before the Inspection Date, then Purchaser may terminate this Agreement by giving notice of such termination to Seller on or before the Inspection Date. If Purchaser does give notice of termination to Seller, then Escrow Agent shall refund the Earnest Money to Purchaser, and the parties hereto shall have no further rights, duties or obligations under this Agreement. However, Purchaser may elect to extend the Inspection Date for three (3) additional sixty (60) day periods ("Extension Periods") by giving Seller notice of each such extension and, within three (3) business days of the Purchaser's notice of exercising any such extension, Purchaser shall deliver a check in the amount of $10,000 to Escrow Agent as additional Earnest Money. If this transaction does not close for any reason, other than (i) Seller's default (paragraph 9 below) or due to casualty and condemnation (paragraph 7 below), the additional $10,000 Earnest Money deposit(s) shall be non-refundable in favor of Seller. Upon the termination of this Agreement, the Escrow Agent shall distribute these additional Earnest Money deposit(s) to Seller per the terms and instructions provided to the Escrow Agent in paragraph 10 hereof. At and in the event of the Closing, the additional Earnest Money deposit(s) shall be paid over to Seller and applied and credited in reduction of the Purchase Price.

6. REPRESENTATIONS. Seller represents and warrants to Purchaser, as follows: (i) Seller owns the entire fee simple estate in and to the Property and owns Marketable Title to the Property; (ii) Seller has received no notice of, and there are not any, actions, suits or proceedings pending or threatened before or by any judicial or any governmental authority against or affecting Seller or the Property; (iii) Seller has received no notice of, and there are not any, violations of any federal, state or local law, ordinance, or regulation affecting Seller or the Property; (iv) Seller has received no notice of, and there is not, any pending, threatened or contemplated action by any entity or governmental authority having the power of condemnation, which might result in all or any portion of the Property or any interest therein being taken by condemnation or conveyed in lieu thereof; (v) there is no tenant, lessee or other occupant of the Property having any right or claim of possession or use of the Property at or after the Closing Date; (vi) the Property has not been used for (a) landfill, dumping or other waste disposal activities or operations, or (b) a burial site or pit for stumps, organic material or construction debris; (vii) there are no storage tanks (or similar vessels) or associated piping or lines, either above or below ground, septic tanks or fields, sumps or wells at, on, in, under, above or about the Property; (viii) there are no wetlands (designated or defined as such under the Clean Water Act or by the U.S. Army Corps of Engineers) on or about the Property and no portion of the Property lies within any flood hazard area or flood plain as designated by any governmental or quasi-governmental agency; and (ix) there are no Hazardous Substances located at, on, in, under, above, about or adjacent to the Property. As used herein, "Hazardous Substances" means petroleum, petroleum products (including gasoline, diesel, motor fuel, crude oil or any crude oil fraction), petroleum hydrocarbons, polychlorinated biphenyl or PCBs, asbestos, pesticides, herbicides, explosive materials, containers, tanks, vessels, pipes or lines now or formerly used for storing or transporting any of the foregoing and any other substance identified, defined, classified or regulated as a hazardous substance or waste in or pursuant to any federal, state or local law, ordinance, or regulation which pertains to health, safety, any Hazardous Substance or the environment ("Environmental

Laws") or generally any substance or other material, the removal of which is required or the maintenance of which is prohibited, penalized or regulated by any federal, state or local agency.

7. CASUALTY AND CONDEMNATION. In the event of any damage to or destruction of the Property or any portion thereof or in the event of any taking or written threat of taking by condemnation (or any conveyance in lieu thereof) of the Property or any portion thereof by any entity or governmental authority having the power of condemnation, Purchaser shall, by notice to Seller provided within thirty (30) days of receiving notice from Seller of such event, elect to: (i) terminate this Agreement and all of Purchaser's obligations under this Agreement, whereupon the Earnest Money shall be refunded to Purchaser, and the parties shall have no further rights, duties or obligations under this Agreement; or (ii) consummate the purchase of the Property. If Purchaser does not elect to terminate this Agreement pursuant to clause (i) of this Section, then Seller shall on the Closing Date pay to Purchaser all insurance proceeds then received by Seller, together with any deductible amounts under Seller's insurance policies, and all condemnation awards and compensation then received by Seller. In addition, Seller shall transfer and assign to Purchaser, in form satisfactory to Purchaser, all rights and claims of Seller with respect to payment for damages and compensation on account of such damage, destruction or taking. The Closing Date shall be extended, if and to the extent necessary, to allow Purchaser such a thirty (30) day period in which to make the election under this Section.

8. CONDITIONS. In addition to any other conditions provided herein, Purchaser's obligations under this Agreement are subject to and conditioned upon the satisfaction or performance or waiver in writing by Purchaser of the following terms and conditions: (i) Seller shall have fully performed and observed all covenants and obligations of this Agreement to be performed and observed by Seller before, on or as of the Closing Date; (ii) all of the representations and warranties made herein by Seller shall be true and correct in all respects as of the Agreement Date and as of the Closing Date; (iii) Purchaser shall have obtained all permits, approvals and consents from any and all governmental authorities having jurisdiction over the Property which may be necessary or appropriate to demolish and clear away all existing improvements on the Property and to construct, use and operate the Proposed Improvements, including, without limitation, land disturbance, grading, soil conservation, storm drainage, water, sanitary sewer, driveway curb cut and building and development permits; and (iv) the Property is zoned so as to permit the construction, use and operation of the Proposed Improvements without special condition. As used herein, the "Proposed Improvements" means a retail store, together with related parking and other improvements, which Purchaser presently intends to develop and construct on the Property in accordance with plans and specifications acceptable to Purchaser. If the conditions in this Section have not been satisfied or performed on or as of the Closing Date or waived in writing by Purchaser, then Purchaser shall have the right, at its option, to elect one of the following: (i) to terminate this Agreement by notice to Seller given on or before the Closing Date in which event the Earnest Money shall be refunded to Purchaser, and the parties hereto shall have no further rights, duties or obligations under this Agreement (provided, however, if such failure of condition also constitutes a default by Seller under this Agreement, including a breach of the representations, warranties and covenants made herein by Seller), Purchaser's termination shall be without prejudice to any other rights or remedies of Purchaser hereunder, at law or in equity, including the right to exercise the remedies set forth in Section 9 hereof); or (ii) to extend the Closing Date for a period not to exceed ninety (90) days to allow Seller or Purchaser, as the case may be, to satisfy or perform the aforesaid conditions (and if not satisfied or performed prior to the expiration of such ninety (90) day period, Purchaser may elect the provisions of subclause (i) above).

9. DEFAULT. If Seller fails or refuses to perform its obligations under this Agreement or if the sale and purchase of the Property contemplated by this Agreement is not consummated because of Seller's default hereunder, then the Earnest Money shall be refunded to Purchaser, on demand, and neither party shall have any further rights or obligations hereunder, except for Purchaser's right to sue for and obtain specific performance of Seller's covenants and obligations hereunder and Purchaser shall also have the right to seek and collect attorneys' fees and costs of litigation incurred by Purchaser in connection with its suit for specific performance. Notwithstanding the foregoing, in the event Seller makes it impossible or impractical for a court of competent jurisdiction to enforce the remedy of specific performance or otherwise the court is unwilling or unable to grant the remedy of specific performance, the foregoing limitation on Purchaser's remedies shall be null and void and Purchaser shall have the right to seek and collect actual and consequential damages arising from Seller's breach or default hereunder. If the sale and purchase of the Property contemplated by this Agreement is not consummated because of Purchaser's default hereunder, then the Earnest Money shall be paid over to Seller, as Seller's sole and exclusive remedy hereunder, at law or in equity for such default of Purchaser, the parties hereto acknowledging that it is difficult or impossible to estimate more precisely or accurately the damages which might be suffered by Seller upon Purchaser's default and that the amount of the Earnest Money is a reasonable pre-estimate of Seller's probable loss in the event of a default by Purchaser. Seller's receipt of the Earnest Money is intended not as a penalty, but as liquidated damages. Seller hereby waives and releases any right to (and hereby covenants that it shall not) sue Purchaser: (i) for specific performance of this Agreement, or

World Pentecostal Market Development Corporation Florida (Newberry-Archer Rd @ 75th St (SW) -Buy/at-Town Ctr)Sales Contract (3-2-12).docx

RLG 3-5-12

or to recover damages in excess of the Earnest Money. Purchaser shall not be deemed to be in default hereunder unless and until Seller gives Purchaser written notice of its failure to comply with the terms hereof and thereafter Purchaser does not cure such failure within thirty (30) days after receipt of such notice.

10. ESCROW AGENT. The Earnest Money shall be deposited or invested in such accounts as Purchaser shall from time to time direct or approve. It is agreed that the duties of Escrow Agent are herein specifically provided and are purely ministerial in nature, and that Escrow Agent shall incur no liability whatsoever (including for failure of the depository). Seller and Purchaser do each hereby release Escrow Agent from any liability for any error of judgment or for any act done or omitted to be done by Escrow Agent in the good faith performance of its duties hereunder and do each hereby indemnify Escrow Agent against, and agree to hold, save, and defend Escrow Agent harmless from, any costs, liabilities, and expenses incurred by Escrow Agent in serving as Escrow Agent hereunder and in discharging its duties and obligations hereunder. Escrow Agent is acting as a stakeholder only with respect to the Earnest Money. If there is any dispute as to whether Escrow Agent is obligated to deliver the Earnest Money or as to whom the Earnest Money is to be delivered, Escrow Agent may refuse to make any delivery and may continue to hold the Earnest Money until receipt by Escrow Agent of an authorization in writing signed by Seller and Purchaser, directing the disposition of the Earnest Money, or, in the absence of such written direction, determination of the rights of the parties in an appropriate judicial proceeding. If such written authorization is not given or a proceeding for such determination is not begun, within fifteen (15) days of notice to Escrow Agent of such dispute (or if a successor escrow agent is not appointed within five (5) days of Escrow Agent's resignation), Escrow Agent may bring an appropriate action or proceeding for leave to deposit the Earnest Money in a court of competent jurisdiction pending such determination (or appointment of a successor escrow agent). Escrow Agent shall be reimbursed for all costs and expenses of such action or proceeding, including, without limitation, attorneys' fees and disbursements, by the party determined not to be entitled to the Earnest Money (or by Seller and Purchaser in equal shares if there is no dispute, but Escrow Agent brings such action or proceeding because no successor escrow agent is appointed within five (5) days of Escrow Agent's resignation). Upon making delivery of the Earnest Money in any of the manners herein provided, Escrow Agent shall have no further liability or obligation hereunder. Escrow Agent may resign upon five (5) days' notice to Seller and Purchaser.

11. MISCELLANEOUS. Any notice, request or other communication (a "notice") required or permitted to be given hereunder shall be in writing and shall be delivered by hand or overnight courier (such as Federal Express) or mailed by United States certified mail, return receipt requested, postage prepaid and addressed to each party at its address as set forth below. Any such notice shall be considered given on the date of such hand delivery, deposit with such overnight courier for next business day delivery or deposit in the United States mail, but the time period (if any is provided herein) in which to respond to such notice shall commence on the date of hand or courier delivery or on the date received following deposit in the United States mail as provided above. This Agreement supersedes all prior discussions and agreements between the parties with respect to the Property and contains the sole and entire understanding between the parties with respect to the Property. This Agreement shall not be modified or amended in any respect except by a written instrument executed by or on behalf of Seller and Purchaser. The validity and enforceability of this Agreement (and any amendments thereto between Seller and Purchaser) shall not be affected by whether or not Broker and/or Escrow Agent have executed this Agreement or any amendments thereto. This Agreement shall not be merged into or with the instruments or documents executed and delivered at the Closing, but shall survive the Closing, and the representations and warranties made herein shall remain in full force and effect. Any condition or right of termination granted by this Agreement to Purchaser is for Purchaser's benefit only, and any and all of said conditions or rights of termination may be waived in the discretion of Purchaser. This Agreement shall be binding even if any conditions or provisions herein are entirely within the discretion or control of either party. This Agreement and the rights, duties, interests and obligations of Purchaser hereunder may be assigned by Purchaser without Seller's consent or approval. This Agreement shall apply to, be binding upon and enforceable against and inure to the benefit of the parties hereto and their respective heirs, successors and assigns. If the time period by which any right, option or election provided under this Agreement must be exercised, or by which any act required hereunder must be performed, or by which the Closing must be held, expires on a Saturday, Sunday or legal or bank holiday, then such time period shall be automatically extended through the close of business on the next regularly scheduled business day. Subject to the foregoing sentence, time is of the essence of this Agreement. This Agreement and any written amendments thereto are hereby authorized to be executed and accepted by facsimile signatures and such facsimile signatures shall be considered valid and binding as original signatures and may be relied upon by the parties hereto. The parties hereto agree that they will each take such steps and execute such documents as may be reasonably required by the other party or parties to carry out the intents and purposes of this Agreement.

12. SPECIAL STIPULATIONS. The Special Stipulations, if any, attached hereto as <u>Exhibit "B"</u> are made a part hereof, are hereby incorporated herein, and in the event they conflict with any of the foregoing provisions the Special Stipulations shall control.

IN WITNESS WHEREOF, the parties hereto have duly signed, sealed, and delivered this Agreement.

SELLER:

Partnership 97, LTD., a Florida limited partnership

By: _____
~~David Miller~~ ALISON COX

Title: Director, CCB, Inc.

Dated as to Seller: March 2, 2012

Address for Seller:

5517 SW 69th Terrace
Gainesville, FL 32608
(352) 372-7736

PURCHASER:

Market Development Corporation, a Georgia corporation

By: _____
Robert L. Gautier, Vice President

Dated as to Purchaser: March 2, 2012

Address for Purchaser:

4200 Northside Parkway, N.W.
Building Two, Suite 200
Atlanta, Georgia 30327-3054

Page 5 of 5

Z:\Word Documents\Market Development Corporation\Florida\Newberry\Archer Rd @ 75th St (SWC-Bryan Town Ctr)\Sales Contract (3-2-12).docx

RLG 35-12



EXHIBIT "B"

SPECIAL STIPULATIONS

Special Stipulations to Agreement (the "Agreement") by and between among Seller and Purchaser. In the event of any conflict between the terms and conditions of any of the following Special Stipulations and the terms and conditions of the main text of the Agreement or of any of the other exhibits to the Agreement, the terms and conditions of these Special Stipulations shall control. In addition to any other terms whose definitions are fixed and defined by these Special Stipulations, the terms used herein with the initial letter capitalized shall have the same meaning ascribed to them as set forth in the main text of the Agreement or any of the other exhibits.

1. Seller agrees with Purchaser, as follows: (i) Seller authorizes Purchaser to file prior to the Closing Date any and all zoning, planning, development, subdivision and compilation applications, petitions, variances, plats and similar instruments (and amendments thereto) (the "Zoning Documents") necessary or appropriate in Purchaser's sole discretion to construct, use and operate the Proposed Improvements; and (ii) Seller shall cooperate with Purchaser in any manner reasonably requested by Purchaser in order to zone or rezone the Property (if necessary) so as to permit the construction, use and operation of the Proposed Improvements, such cooperation to include Seller's execution of any and all Zoning Documents and Seller's attendance at public hearings and proceedings for the purpose of requesting zoning or the rezoning of the Property.

2. In addition to any other obligation to assist Purchaser in the inspection of the Property, Seller agrees to deliver the following items to Purchaser on or before the tenth (10th) day after the Agreement Date (all to the extent in the possession of, or available to, Seller): (i) copies of any and all title insurance policies relating to the Property; (ii) copies of any and all existing surveys of the Property; and (iii) copies of any and all reports, correspondence, building and civil design plans, permits, studies, assessments, surveys, investigations, analyses and certifications relating to the condition or operation of the Property, including, without limitation, soils, engineering, hydrology, structural, hazardous waste and environmental reports, studies and assessments, and any so-called Phase I and Phase II environmental site assessments, and any environmental closure reports and corrective or remedial action plans relating to the Property.

3. Seller represents and warrants to Purchaser that Seller has received no notice of, and there is not, any Environmental Claim regarding the Property or any adjacent property and the Property does not appear on the National Priorities List, the State of Florida Hazardous Site Inventory List or any other list or data base of properties maintained by any federal, state or local agency or department showing properties which are known to contain or which are suspected of containing a Hazardous Substance. As used herein, "Environmental Claim" means any investigative, enforcement, cleanup, removal, containment, remedial or other private or governmental or regulatory action at any time threatened, instituted or completed pursuant to any applicable Environmental Law, against Seller or against or with respect to the Property or any condition, use or activity on the Property, and any claim at any time threatened or made by any person against Seller or against or with respect to the Property or any condition, use or activity on the Property, relating to damage, contribution, cost recovery, compensation, loss or injury resulting from or in any way arising in connection with any Hazardous Substance or any Environmental Law.

4. Seller shall cooperate with Purchaser to the extent necessary for Purchaser to perform any environmental site assessment, including without limitation, requesting further approvals, if needed, from any necessary parties for the performance by Purchaser of any environmental site assessment. Purchaser, by virtue of performing any environmental site assessment, does not assume the responsibility of the person in charge of the Property, or otherwise undertake responsibility for reporting to any federal, state or local public agencies any conditions on the Property that may present a potential threat to public health, safety or the environment. Purchaser reserves the right, however, to disclose any such conditions to public agencies or persons who may be adversely affected by such conditions. Purchaser assumes no liability or responsibility for any Hazardous Substances found at, on, in, under, above, about or adjacent to the Property, including without limitation, liability for removal or clean-up of such materials or for any other conditions which may be present on the Property.