**Commercial Contract**                                     FloridaRealtors

1*  1. PARTIES AND PROPERTY: AMA Gainesville Investments Four LLC ("Buyer")
2*  agrees to buy and __Partnership 97 LTD and Brice Development, Inc__ ("Seller")
3*  agrees to sell the property as: Street Address: _____
4*  _____See Exhibit A attached_____
5*  Legal Description: __See Exhibit A attached_____
6*  _____
7*  and the following Personal Property: __None_____
8*  _____
9   (all collectively referred to as the "Property") on the terms and conditions set forth below.

10*  2. PURCHASE PRICE:                                                   $ 4,200,000.00
11*  (a) Deposit held in escrow by __Skobel Law PA__                       $ 50,000.00
12       ("Escrow Agent") (checks are subject to actual and final collection)
13*  Escrow Agent's address: __8819 SW 74th Ave__          Phone: 352-224-3692
14*  (b) Additional deposit to be made to Escrow Agent within ____ days after Effective Date  $ _____
15*  (c) Additional deposit to be made to Escrow Agent within ____ days after Effective Date  $ _____
16*  (d) Total financing (see Paragraph 5)                                 $ _____
17*  (e) Other _____                   $ _____
18   (f) All deposits will be credited to the purchase price at closing. Balance to close, subject
19*  to adjustments and prorations, to be paid with locally drawn cashier's or official bank   $ 4,150,000.00
20   check(s) or wire transfer.

21   3. TIME FOR ACCEPTANCE; EFFECTIVE DATE; COMPUTATION OF TIME: Unless this offer is signed by Seller
22*  and Buyer and an executed copy delivered to all parties on or before __October 5, 2012__, this offer will be
23   withdrawn and the Buyer's deposit, if any, will be returned. The time for acceptance of any counter offer will be 3
24   days from the date the counter offer is delivered. The "Effective Date" of this Contract is the date on which the
25   last one of the Seller and Buyer has signed or initialed and delivered this offer or the final counter offer.
26   Calendar days will be used when computing time periods, except time periods of 5 days or less. Time periods of 5
27   days or less will be computed without including Saturday, Sunday, or national legal holidays. Any time period ending
28   on a Saturday, Sunday, or national legal holiday will extend until 5:00 p.m. of the next business day. Time is of the
29   essence in this Contract.

30   4. CLOSING DATE AND LOCATION:
31*  (a) Closing Date: This transaction will be closed on __November 27, 2012__ (Closing Date), unless specifically
32   extended by other provisions of this Contract. The Closing Date will prevail over all other time periods including, but
33   not limited to, Financing and Due Diligence periods. In the event insurance underwriting is suspended on Closing
34   Date and Buyer is unable to obtain property insurance, Buyer may postpone closing up to 5 days after the
35   insurance underwriting suspension is lifted.

36*  Buyer (___) and Seller (___) acknowledge receipt of a copy of this page, which is Page 1 of 8 Pages.

CC-4   Rev. 12/10   ©2010   Florida Association of REALTORS®   All Rights Reserved

EXHIBIT 3

37*   (b) Location: Closing will take place in  Alachua  County, Florida. (If left blank, closing
38    will take place in the county where the property is located.) Closing may be conducted by mail or electronic means.

39   5. THIRD PARTY FINANCING:

40*   BUYER'S OBLIGATION: Within ____ days (5 days if left blank) after Effective Date, Buyer will apply for third party
41*   financing in an amount not to exceed ____% of the purchase price or $_____, with a fixed interest rate
42*   not to exceed ____% per year with an initial variable interest rate not to exceed ____%, with points or commitment
43*   or loan fees not to exceed ____% of the principal amount, for a term of ____ years, and amortized over _____
44    years, with additional terms as follows:
45*   _____.
46    Buyer will timely provide any and all credit, employment, financial and other information reasonably required by any
47*   lender. Buyer will use good faith and reasonable diligence to (i) obtain Loan Approval within ____ days (45 days if
48    left blank) from Effective Date (Loan Approval Date), (ii) satisfy terms and conditions of the Loan Approval, and
49    (iii) close the loan. Buyer will keep Seller and Broker fully informed about loan application status and authorizes the
50    mortgage broker and lender to disclose all such information to Seller and Broker. Buyer will notify Seller immediately
51    upon obtaining financing or being rejected by a lender. CANCELLATION: If Buyer, after using good faith and
52*   reasonable diligence, fails to obtain Loan Approval by Loan Approval Date, Buyer may within ____ days (3 days if left
53    blank) deliver written notice to Seller stating Buyer either waives this financing contingency or cancels this Contract.
54    If Buyer does neither, then Seller may cancel this Contract by delivering written notice to Buyer at any time
55    thereafter. Unless this financing contingency has been waived, this Contract shall remain subject to the
56    satisfaction, by closing, of those conditions of Loan Approval related to the Property. DEPOSIT(S) (for purposes
57    of Paragraph 5 only): If Buyer has used good faith and reasonable diligence but does not obtain Loan
58    Approval by Loan Approval Date and thereafter either party elects to cancel this Contract as set forth above or the
59    lender fails or refuses to close on or before the Closing Date without fault on Buyer's part, the Deposit(s) shall be
60    returned to Buyer, whereupon both parties will be released from all further obligations under this Contract, except for
61    obligations stated herein as surviving the termination of this Contract. If neither party elects to terminate this Contract
62    as set forth above or Buyer fails to use good faith or reasonable diligence as set forth above, Seller will be entitled to
63    retain the Deposit(s) if the transaction does not close.

64*   6. TITLE: Seller has the legal capacity to and will convey marketable title to the Property by [X] statutory warranty
65*   deed [ ] other _____, free of liens, easements and encumbrances of record or
66    known to Seller, but subject to property taxes for the year of closing; covenants, restrictions and public utility
67    easements of record; existing zoning and governmental regulations; and (list any other matters to which title will be
68*   subject) _____
69*   _____;
70    provided there exists at closing no violation of the foregoing and none of them prevents Buyer's intended use of the
71*   Property as  Mixed Use (Commercial/Residential) Development (Brytan) & Single Family Pradera

72    (a) Evidence of Title: The party who pays the premium for the title insurance policy will select the closing agent
73*   and pay for the title search and closing services. Seller will, at (check one) [ ] Seller's [X] Buyer's expense and
74*   within ____ days [ ] after Effective Date [ ] or at least 15 days before Closing Date deliver to Buyer (check one)
75*   [X] (i.) a title insurance commitment by a Florida licensed title insurer setting forth those matters to be
76    discharged by Seller at or before Closing and, upon Buyer recording the deed, an owner's policy in the amount
77    of the purchase price for fee simple title subject only to exceptions stated above. If Buyer is paying for the
78    evidence of title and Seller has an owner's policy, Seller will deliver a copy to Buyer within 15 days after
79    Effective Date.
80*   [ ] (ii.) an abstract of title, prepared or brought current by an existing abstract firm or certified as correct by an
81    existing firm. However, if such an abstract is not available to Seller, then a prior owner's title policy acceptable
82    to the proposed insurer as a base for reissuance of coverage may be used. The prior policy will include copies
83    of all policy exceptions and an update in a format acceptable to Buyer from the policy effective date and
84    certified to Buyer or Buyer's closing agent together with copies of all documents recited in the prior policy and
85    in the update. If such an abstract or prior policy is not available to Seller then (i.) above will be the evidence of
86    title.

87    (b) Title Examination: Buyer will, within 15 days from receipt of the evidence of title deliver written notice to Seller
88*   of title defects. Title will be deemed acceptable to Buyer if (1) Buyer fails to deliver proper notice of defects or

89*   Buyer (___) (___) and Seller (___) (___) acknowledge receipt of a copy of this page, which is Page 2 of 8 Pages.

CC-4   Rev. 12/10   ©2010   Florida Association of REALTORS®   All Rights Reserved

90· (2) Buyer delivers proper written notice and Seller cures the defects within ___ days from receipt of the notice
91 ("Curative Period"). If the defects are cured within the Curative Period, closing will occur within 10 days from receipt
92 by Buyer of notice of such curing. Seller may elect not to cure defects if Seller reasonably believes any defect
93 cannot be cured within the Curative Period. If the defects are not cured within the Curative Period, Buyer will have
94 10 days from receipt of notice of Seller's inability to cure the defects to elect whether to terminate this Contract or
95 accept title subject to existing defects and close the transaction without reduction in purchase price.

96 (c) Survey: (check applicable provisions below)
97· [X] (i.)Seller will, within _10_ days from Effective Date, deliver to Buyer copies of prior surveys, plans,
98 specifications, and engineering documents, if any, and the following documents relevant to this transaction:
99· __contracts on portions of the property__
100 prepared for Seller or in Seller's possession, which show all currently existing structures. In the event this
101 transaction does not close, all documents provided by Seller will be returned to Seller within 10 days from the
102 date this Contract is terminated.
103· [ ] Buyer will, at [ ] Seller's [ ] Buyer's expense and within the time period allowed to deliver and examine title
104 evidence, obtain a current certified survey of the Property from a registered surveyor. If the survey reveals
105· encroachments on the Property or that the improvements encroach on the lands of another, [ ] Buyer will
106· accept the Property with existing encroachments [ ] such encroachments will constitute a title defect to be
107 cured within the Curative Period.

108 (d) Ingress and Egress: Seller warrants that the Property presently has ingress and egress.

109 7. PROPERTY CONDITION: Seller will deliver the Property to Buyer at the time agreed in its present "as is"
110 condition, ordinary wear and tear excepted, and will maintain the landscaping and grounds in a comparable condition.
111 Seller makes no warranties other than marketability of title. In the event that the condition of the Property has
112 materially changed since the expiration of the Due Diligence Period, Buyer may elect to terminate the Contract and
113 receive a refund of any and all deposits paid, plus interest, if applicable. By accepting the Property "as is", Buyer
114 waives all claims against Seller for any defects in the Property. (Check (a) or (b))

115· [ ] (a) As Is: Buyer has inspected the Property or waives any right to inspect and accepts the Property in its "as is"
116 condition.

117· [X] (b) Due Diligence Period: Buyer will, at Buyer's expense and within _45_ days from Effective Date ("Due
118 Diligence Period"), determine whether the Property is suitable, in Buyer's sole and absolute discretion, for Buyer's
119 intended use and development of the Property as specified in Paragraph 6. During the Due Diligence Period,
120 Buyer may conduct any tests, analyses, surveys and investigations ("Inspections") which Buyer deems necessary
121 to determine to Buyer's satisfaction the Property's engineering, architectural, environmental properties; zoning and
122 zoning restrictions; flood zone designation and restrictions; subdivision regulations; soil and grade; availability of
123 access to public roads, water, and other utilities; consistency with local, state and regional growth management and
124 comprehensive land use plans; availability of permits, government approvals and licenses; compliance with
125 American with Disabilities Act; absence of asbestos, soil and ground water contamination; and other inspections
126 that Buyer deems appropriate to determine the suitability of the Property for Buyer's intended use and
127 development. Buyer will deliver written notice to Seller prior to the expiration of the Due Diligence Period of
128 Buyer's determination of whether or not the Property is acceptable. Buyer's failure to comply with this notice
129 requirement will constitute acceptance of the Property in its present "as is" condition. Seller grants to Buyer, its
130 agents, contractors and assigns, the right to enter the Property at any time during the Due Diligence Period for the
131 purpose of conducting Inspections; provided, however, that Buyer, its agents, contractors and assigns enter the
132 Property and conduct Inspections at their own risk. Buyer will indemnify and hold Seller harmless from losses,
133 damages, costs, claims and expenses of any nature, including attorneys' fees at all levels, and from liability to any
134 person, arising from the conduct of any and all inspections or any work authorized by Buyer. Buyer will not engage
135 in any activity that could result in a mechanic's lien being filed against the Property without Seller's prior written
136 consent. In the event this transaction does not close, (1) Buyer will repair all damages to the Property resulting
137 from the Inspections and return the Property to the condition it was in prior to conduct of the Inspections, and
138 (2) Buyer will, at Buyer's expense release to Seller all reports and other work generated as a result of the
139 Inspections. Should Buyer deliver timely notice that the Property is not acceptable, Seller agrees that Buyer's
140 deposit will be immediately returned to Buyer and the Contract terminated.

141 (c) Walk-through Inspection: Buyer may, on the day prior to closing or any other time mutually agreeable to the

142· Buyer (____) and Seller (____) acknowledge receipt of a copy of this page, which is Page 3 of 8 Pages.

CC-4  Rev. 12/10  ©2010  Florida Association of REALTORS®  All Rights Reserved

143 parties, conduct a final "walk-through" inspection of the Property to determine compliance with this paragraph and
144 to ensure that all Property is on the premises.

145 **8. OPERATION OF PROPERTY DURING CONTRACT PERIOD:** Seller will continue to operate the Property and any
146 business conducted on the Property in the manner operated prior to Contract and will take no action that would
147 adversely impact the Property, tenants, lenders or business, if any. Any changes, such as renting vacant space, that
148* materially affect the Property or Buyer's intended use of the Property will be permitted [X] only with Buyer's consent
149* [ ] without Buyer's consent.

150 **9. CLOSING PROCEDURE:** Unless otherwise agreed or stated herein, closing procedure shall be in accordance with
151 the norms where the Property is located.

152 (a) **Possession and Occupancy:** Seller will deliver possession and occupancy of the Property to Buyer at
153 closing. Seller will provide keys, remote controls, and any security/access codes necessary to operate all locks,
154 mailboxes, and security systems.

155 (b) **Costs:** Buyer will pay Buyer's attorneys' fees, taxes and recording fees on notes, mortgages and financing
156 statements and recording fees for the deed. Seller will pay Seller's attorneys' fees, taxes on the deed and
157 recording fees for documents needed to cure title defects. If Seller is obligated to discharge any encumbrance at or
158 prior to closing and fails to do so, Buyer may use purchase proceeds to satisfy the encumbrances.

159 (c) **Documents:** Seller will provide the deed; bill of sale; mechanic's lien affidavit; originals of those assignable
160 service and maintenance contracts that will be assumed by Buyer after the Closing Date and letters to each
161 service contractor from Seller advising each of them of the sale of the Property and, if applicable, the transfer of its
162 contract, and any assignable warranties or guarantees received or held by Seller from any manufacturer,
163 contractor, subcontractor, or material supplier in connection with the Property; current copies of the condominium
164 documents, if applicable; assignments of leases, updated rent roll; tenant and lender estoppels letters; tenant
165 subordination, non-disturbance and attornment agreements (SNDAs) required by the Buyer or Buyer's lender;
166 assignments of permits and licenses; corrective instruments; and letters notifying tenants of the change in
167 ownership/rental agent. If any tenant refuses to execute an estoppels letter, Seller will certify that information
168 regarding the tenant's lease is correct. If Seller is an entity, Seller will deliver a resolution of its Board of Directors
169 authorizing the sale and delivery of the deed and certification by the appropriate party certifying the resolution and
170 setting forth facts showing the conveyance conforms to the requirements of local law. Seller will transfer security
171 deposits to Buyer. Buyer will provide the closing statement, mortgages and notes, security agreements, and
172 financing statements.

173 (d) **Taxes and Prorations:** Real estate taxes, personal property taxes on any tangible personal property, bond
174 payments assumed by Buyer, interest, rents (based on actual collected rents), association dues, insurance
175 premiums acceptable to Buyer, and operating expenses will be prorated through the day before closing. If the
176 amount of taxes for the current year cannot be ascertained, rates for the previous year will be used with due
177 allowance being made for improvements and exemptions. Any tax proration based on an estimate will, at request
178 of either party, be readjusted upon receipt of current year's tax bill; this provision will survive closing.

179 (e) **Special Assessment Liens:** Certified, confirmed, and ratified special assessment liens as of the Closing Date
180 will be paid by Seller. If a certified, confirmed, and ratified special assessment is payable in installments, Seller will
181 pay all installments due and payable on or before the Closing Date, with any installment for any period extending
182 beyond the Closing Date prorated, and Buyer will assume all installments that become due and payable after the
183 Closing Date. Buyer will be responsible for all assessments of any kind which become due and owing after Closing
184 Date, unless an improvement is substantially completed as of Closing Date. If an improvement is substantially
185 completed as of the Closing Date but has not resulted in a lien before closing, Seller will pay the amount of the last
186 estimate of the assessment. This subsection applies to special assessment liens imposed by a public body and
187 does not apply to condominium association special assessments.

188 (f) **Foreign Investment in Real Property Tax Act (FIRPTA):** If Seller is a "foreign person" as defined by FIRPTA,
189 Seller and Buyer agree to comply with Section 1445 of the Internal Revenue Code. Seller and Buyer will
190 complete, execute, and deliver as directed any instrument, affidavit, or statement reasonably necessary to comply
191 with the FIRPTA requirements, including delivery of their respective federal taxpayer identification numbers or

192* Buyer (____) and Seller (____) acknowledge receipt of a copy of this page, which is Page 4 of 8 Pages.

CC-4  Rev. 12/10  ©2010  Florida Association of REALTORS®  All Rights Reserved

193 Social Security Numbers to the closing agent. If Buyer does not pay sufficient cash at closing to meet the
194 withholding requirement, Seller will deliver to Buyer at closing the additional cash necessary to satisfy the
195 requirement.

196 **10. ESCROW AGENT:** Seller and Buyer authorize Escrow Agent or Closing Agent (collectively "Agent") to
197 receive, deposit, and hold funds and other property in escrow and, subject to collection, disburse them in accordance
198 with the terms of this Contract. The parties agree that Agent will not be liable to any person for misdelivery of
199 escrowed items to Seller or Buyer, unless the misdelivery is due to Agent's willful breach of this Contract or gross
200 negligence. If Agent has doubt as to Agent's duties or obligations under this Contract, Agent may, at Agent's option,
201 (a) hold the escrowed items until the parties mutually agree to its disbursement or until a court of competent
202 jurisdiction or arbitrator determines the rights of the parties or (b) deposit the escrowed items with the clerk of
203 the court having jurisdiction over the matter and file an action in interpleader. Upon notifying the parties of such action,
204 Agent will be released from all liability except for the duty to account for items previously delivered out of escrow. If
205 Agent is a licensed real estate broker, Agent will comply with Chapter 475, Florida Statutes. In any suit in which Agent
206 interpleads the escrowed items or is made a party because of acting as Agent hereunder, Agent will recover
207 reasonable attorney's fees and costs incurred, with these amounts to be paid from and out of the escrowed items and
208 charged and awarded as court costs in favor of the prevailing party.

209 **11. CURE PERIOD:** Prior to any claim for default being made, a party will have an opportunity to cure any alleged
210 default. If a party fails to comply with any provision of this Contract, the other party will deliver written notice to the non-
211* complying party specifying the non-compliance. The non-complying party will have ___ days (5 days if left blank) after
212 delivery of such notice to cure the non-compliance. Notice and cure shall not apply to failure to close.

213 **12. RETURN OF DEPOSIT:** Unless otherwise specified in the Contract, in the event any condition of this Contract is
214 not met and Buyer has timely given any required notice regarding the condition having not been met, Buyer's deposit
215 will be returned in accordance with applicable Florida Laws and regulations.

216 **13. DEFAULT:**

217 (a) In the event the sale is not closed due to any default or failure on the part of Seller other than failure to make
218 the title marketable after diligent effort, Buyer may either (1) receive a refund of Buyer's deposit(s) or (2) seek
219 specific performance. If Buyer elects a deposit refund, Seller will be liable to Broker for the full amount of the
220 brokerage fee.

221 (b) In the event the sale is not closed due to any default or failure on the part of Buyer, Seller may either (1) retain
222 all deposit(s) paid or agreed to be paid by Buyer as agreed upon liquidated damages, consideration for the
223 execution of this Contract, and in full settlement of any claims, upon which this Contract will terminate or (2) seek
224 specific performance. If Seller retains the deposit, Seller will pay the Brokers named in Paragraph 20 fifty percent
225 of all forfeited deposits retained by Seller (to be split equally among the Brokers) up to the full amount of the
226 brokerage fee. If Buyer fails to timely place a deposit as required by this Contract, Seller may either (1) terminate
227 the Contract and seek the remedy outlined in this subparagraph or (2) proceed with the Contract without waiving
228 any remedy for Buyer's default.

229 **14. ATTORNEY'S FEES AND COSTS:** In any claim or controversy arising out of or relating to this Contract, the
230 prevailing party, which for purposes of this provision will include Buyer, Seller and Broker, will be awarded reasonable
231 attorneys' fees, costs, and expenses.

232 **15. NOTICES:** All notices will be in writing and may be delivered by mail, overnight courier, personal delivery, or
233 electronic means. Parties agree to send all notices to addresses specified on the signature page(s). Any notice,
234 document, or item given by or delivered to an attorney or real estate licensee (including a transaction broker)
235 representing a party will be as effective as if given by or delivered to that party.

236 **16. DISCLOSURES:**

237 **(a) Commercial Real Estate Sales Commission Lien Act:** The Florida Commercial Real Estate Sales
238 Commission Lien Act provides that a broker has a lien upon the owner's net proceeds from the sale of commercial
239 real estate for any commission earned by the broker under a brokerage agreement. The lien upon the owner's net

240* Buyer (___) and Seller (___) acknowledge receipt of a copy of this page, which is Page 5 of 8 Pages.

CC-4  Rev. 12/10  ©2010  Florida Association of REALTORS®  All Rights Reserved

proceeds is a lien upon personal property which attaches to the owner's net proceeds and does not attach to any interest in real property. This lien right cannot be waived before the commission is earned.

**(b) Special Assessment Liens Imposed by Public Body:** The Property may be subject to unpaid special assessment lien(s) imposed by a public body. (A public body includes a Community Development District.) Such liens, if any, shall be paid as set forth in Paragraph 9(e).

**(c) Radon Gas:** Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county public health unit.

**(d) Energy-Efficiency Rating Information:** Buyer acknowledges receipt of the information brochure required by Section 553.996, Florida Statutes.

## 17. RISK OF LOSS:

(a) If, after the Effective Date and before closing, the Property is damaged by fire or other casualty, Seller will bear the risk of loss and Buyer may cancel this Contract without liability and the deposit(s) will be returned to Buyer. Alternatively, Buyer will have the option of purchasing the Property at the agreed upon purchase price and Seller will credit the deductible, if any and transfer to Buyer at closing any insurance proceeds, or Seller's claim to any insurance proceeds payable for the damage. Seller will cooperate with and assist Buyer in collecting any such proceeds. Seller shall not settle any insurance claim for damage caused by casualty without the consent of the Buyer.

(b) If, after the Effective Date and before closing, any part of the Property is taken in condemnation or under the right of eminent domain, or proceedings for such taking will be pending or threatened, Buyer may cancel this Contract without liability and the deposit(s) will be returned to Buyer. Alternatively, Buyer will have the option of purchasing what is left of the Property at the agreed upon purchase price and Seller will transfer to the Buyer at closing the proceeds of any award, or Seller's claim to any award payable for the taking. Seller will cooperate with and assist Buyer in collecting any such award.

**18. ASSIGNABILITY; PERSONS BOUND:** This Contract may be assigned to a related entity, and otherwise ☐ is not assignable ☐ is assignable. If this Contract may be assigned, Buyer shall deliver a copy of the assignment agreement to the Seller at least 5 days prior to Closing. The terms "Buyer," "Seller" and "Broker" may be singular or plural. This Contract is binding upon Buyer, Seller and their heirs, personal representatives, successors and assigns (if assignment is permitted).

**19. MISCELLANEOUS:** The terms of this Contract constitute the entire agreement between Buyer and Seller. Modifications of this Contract will not be binding unless in writing, signed and delivered by the party to be bound. Signatures, initials, documents referenced in this Contract, counterparts and written modifications communicated electronically or on paper will be acceptable for all purposes, including delivery, and will be binding. Handwritten or typewritten terms inserted in or attached to this Contract prevail over preprinted terms. If any provision of this Contract is or becomes invalid or unenforceable, all remaining provisions will continue to be fully effective. This Contract will be construed under Florida law and will not be recorded in any public records.

**20. BROKERS:** Neither Seller nor Buyer has used the services of, or for any other reason owes compensation to, a licensed real estate Broker other than:

(a) Seller's Broker: <u>Bosshardt Realty</u>     <u>Michael S. Ryals</u>
                         (Company Name)                   (Licensee)
<u>5542 NW 43rd St. Gainesville, FL</u>
                       (Address, Telephone, Fax, E-mail)

who ☐ is a single agent ☒ is a transaction broker ☐ has no brokerage relationship and who will be compensated by ☒ Seller ☐ Buyer ☐ both parties pursuant to ☒ a listing agreement ☐ other (specify) _____

Buyer (_____) (_____) and Seller (_____) (_____) acknowledge receipt of a copy of this page, which is Page 6 of 8 Pages.

CC-4   Rev. 12/10   ©2010   Florida Association of REALTORS®   All Rights Reserved

288* (b) Buyer's Broker: <u>Skobel Realty</u>                         <u>Loree Schulson</u>
289                      (Company Name)                                (Licensee)
290* <u>8819 SW 74th Ave, Gainesville, FL</u>
291                (Address, Telephone, Fax, E-mail)
292* who ☐ is a single agent ☒ is a transaction broker ☐ has no brokerage relationship and who will be compensated
293* by ☐ Seller's Broker ☒ Seller ☐ Buyer ☐ both parties pursuant to ☐ an MLS offer of compensation ☐ other (specify)
294* <u>Buyer's Broker will receive 3% of sale price according to MLS listing</u>
295 (collectively referred to as "Broker") in connection with any act relating to the Property, including but not limited to
296 inquiries, introductions, consultations, and negotiations resulting in this transaction. Seller and Buyer agree to
297 indemnify and hold Broker harmless from and against losses, damages, costs and expenses of any kind, including
298 reasonable attorneys' fees at all levels, and from liability to any person, arising from (1) compensation claimed which is
299 inconsistent with the representation in this Paragraph, (2) enforcement action to collect a brokerage fee pursuant to
300 Paragraph 10, (3) any duty accepted by Broker at the request of Seller or Buyer, which is beyond the scope of
301 services regulated by Chapter 475, Florida Statutes, as amended, or (4) recommendations of or services provided and
302 expenses incurred by any third party whom Broker refers, recommends, or retains for or on behalf of Seller or Buyer.

303 **21. OPTIONAL CLAUSES:** (Check if any of the following clauses are applicable and are attached as an addendum to
304 this Contract):
305* ☐ Arbitration            ☐ Seller Warranty                    ☐ Existing Mortgage
306* ☐ Section 1031 Exchange  ☐ Coastal Construction Control Line  ☐ Buyer's Attorney Approval
307* ☐ Property Inspection and Repair ☐ Flood Area Hazard Zone     ☐ Seller's Attorney Approval
308* ☐ Seller Representations ☐ Seller Financing                   ☐ Other _____

309 **22. ADDITIONAL TERMS:**

310* <u>This contract is subject to an existing/pending contract covering</u>
311* <u>approximately 3 acres in the Town Center portion of Brytan, and fronting</u>
312* <u>Archer Road. This pending contract is for $1,500,000. A copy will be</u>
313* <u>provided to Buyer within 5 days of the Effective Date herein.</u>
314* _____
315* _____
316* _____
317* _____
318* _____
319* _____
320* _____

321 THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK THE
322 ADVICE OF AN ATTORNEY PRIOR TO SIGNING. BROKER ADVISES BUYER AND SELLER TO VERIFY ALL
323 FACTS AND REPRESENTATIONS THAT ARE IMPORTANT TO THEM AND TO CONSULT AN APPROPRIATE
324 PROFESSIONAL FOR LEGAL ADVICE (FOR EXAMPLE, INTERPRETING CONTRACTS, DETERMINING THE
325 EFFECT OF LAWS ON THE PROPERTY AND TRANSACTION, STATUS OF TITLE, FOREIGN INVESTOR
326 REPORTING REQUIREMENTS, ETC.) AND FOR TAX, PROPERTY CONDITION, ENVIRONMENTAL AND OTHER
327 ADVICE. BUYER ACKNOWLEDGES THAT BROKER DOES NOT OCCUPY THE PROPERTY AND THAT ALL
328 REPRESENTATIONS (ORAL, WRITTEN OR OTHERWISE) BY BROKER ARE BASED ON SELLER
329 REPRESENTATIONS OR PUBLIC RECORDS UNLESS BROKER INDICATES PERSONAL VERIFICATION OF
330 THE REPRESENTATION. BUYER AGREES TO RELY SOLELY ON SELLER, PROFESSIONAL INSPECTORS
331 AND GOVERNMENTAL AGENCIES FOR VERIFICATION OF THE PROPERTY CONDITION, SQUARE FOOTAGE
332 AND FACTS THAT MATERIALLY AFFECT PROPERTY VALUE.

333* Buyer (____) and Seller (____) acknowledge receipt of a copy of this page, which is Page 7 of 8 Pages.

CC-4  Rev. 12/10  ©2010  Florida Association of REALTORS®  All Rights Reserved

334 Each person signing this Contract on behalf of a party that is a business entity represents and warrants to the other
335 party that such signatory has full power and authority to enter into and perform this Contract in accordance with its
336 terms and each person executing this Contract and other documents on behalf of such party has been duly authorized
337 to do so.

338* _Alex [signature]_      Date: 10/5/12

340* _Alex Shobel_
341 (Typed or Printed Name of Buyer)      Tax ID No: ____

342* Title: _President_      Telephone: _352-224-3691_

343* _____      Date: ____
344 (Signature of Buyer)

345* _____      Tax ID No: ____
346 (Typed or Printed Name of Buyer)

347* Title: _____      Telephone: _____

348* Buyer's Address for purpose of notice: _8819 SW 74th Ave, Gainesville, FL 32608_

349* Facsimile: _888-875-8502_      Email: _alex@skobel.com_

350* _Alex Cox, SEC/TREAS_      Date: _10/5/2012_
351 _GLB, Inc. for Planning 97 Ltd._
352* _Alison L. Cox, Sec/Treas_      Tax ID No: ____
353 (Typed or Printed Name of Seller)

354* Title: _____      Telephone: _____

355* _____      Date: ____
356 (Signature of Seller)

357* _____      Tax ID No: ____
358 (Typed or Printed Name of Seller)

359* Title: _____      Telephone: _____

360* Seller's Address for purpose of notice: _____

361* Facsimile: _____      Email: _____

The Florida Association of REALTORS® makes no representation as to the legal validity or adequacy of any provision of this form in any specific transaction. This standardized form should not be used in complex transactions or with extensive riders or additions. This form is available for use by the entire real estate industry and is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by real estate licensees who are members of the NATIONAL ASSOCIATION OF REALTORS® and who subscribe to its Code of Ethics.
The copyright laws of the United States (17 U.S. Code) forbid the unauthorized reproduction of this form by any means including facsimile or computerized forms.

362* Buyer (_AS_) (___) and Seller (_ALC_) (___) acknowledge receipt of a copy of this page, which is Page 8 of 8 Pages.

CC-4 Rev. 12/10 ©2010 Florida Association of REALTORS® All Rights Reserved

## Exhibit A

### Attached to Florida Realtors Commercial Contract between AMA Gainesville Investments Four LLC and (Partnership 97 LTD and Brice Development, Inc)

1. The Property will include all of the land included on the Brytan PD except the associations land, 9 single family lots sold to others, and the Kiddie Academy Daycare land.
2. The Property will include all remaining transportation impact fees credits of approximately $350,000.
3. The Property will include an On-site Maintenance Facility 10,000 square feet, but does not include the building contents and equipment. The Buyer agrees to allow the Seller to rent the maintenance facility for a period of 6 months at a rate of $500 / month.
4. The Seller will include all work done on Brytan Development including but not limited to Concurrency, engineering, architectural plans, marketing, Brytan State and Federal Trademark, and Brytan website.
5. The Brytan Commercial Association Inc and Brytan Association Inc will have have declarants rights signed over to Buyer.
6. The Property will also include Padera 10 Lots listed below:
    a. PRADERA UNIT 1 PB 25 PG 41 LOT 1
    b. PRADERA UNIT 1 PB 25 PG 41 LOT 4
    c. PRADERA UNIT 2 PB 25 PG 43 LOT 9
    d. PRADERA UNIT 2 PB 25 PG 43 LOT 10
    e. PRADERA UNIT 2 PB 25 PG 43 LOT 18
    f. PRADERA UNIT 2 PB 25 PG 43 LOTS 26
    g. PRADERA UNIT 2 PB 25 PG 43 LOTS 27
    h. PRADERA UNIT 2 PB 25 PG 43 LOTS 28
    i. PRADERA UNIT 2 PB 25 PG 43 LOT 29
    j. PRADERA UNIT 2 PB 25 PG 43 LOT 31
7. Buyer will assume Sellers position on board of directors on the Pradera Owners Association Inc and well as receive full control of Architectural Control.
8. A complete legal description referencing the Property shall be supplied by the Seller and shall be attached hereto within 10 days of Effective Date of the Contract.

Seller _[signature]_
Date 10/5/2012

Buyer _[signature]_
Date 10/5/12