UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

MARKET DEVELOPMENT
CORPORATION,
       Plaintiff,

v.                                CASE NO.  1:13-cv-00035-SPM-GRJ

PARTNERSHIP 97, LTD,
a Florida limited partnership;
CLB, INC., a Florida corporation;
AMA GAINESVILLE INVESTMENTS
FOUR, LLC, a Florida limited liability
Company; and ALEX I. SKOBEL,
a Florida resident,
          Defendants.

_____/

## PLAINTIFF'S RESPONSE IN OPPOSITION
## TO DEFENDANTS'MOTION TO DISMISS

      Plaintiff, Market Development Corporation ("Plaintiff"), pursuant to the Federal Rules of Civil Procedure and the Local Rules for the Northern District of Florida, by and through its undersigned counsel, respectfully submits this Response in Opposition to Defendants AMA Gainesville Investments Four, LLC's ("AMA-4") and Alex I. Skobel's ("Skobel") (collectively, "Defendants") Motion to Dismiss and Memorandum of Law in Support Thereof (the "Motion to Dismiss") (ECF No. 16), and states as follows:

## STATEMENT OF THE CASE

      On February 14, 2013, Plaintiff filed its Complaint in this action, alleging claims for relief against the Defendants Partnership 97, LTD. ("P-97"), CLB, Inc. ("CLB"), AMA-4 and Skobelbased upon Defendants' breach of contract, tortious interference with contract, and tortious interference with an advantageous business relationship, all of which relate to

the Defendants' interference with, and ultimate breach of asales contract entered into between Plaintiff and P-97 to purchase certain real property more specifically set forth therein (the "Contract" and the "Property").  (Comp. ECF No. 1, ¶9).

As set forth in more detail therein, the Complaint alleges that in March of 2012 Plaintiff and Defendant P-97 entered into the Contract to purchase the Property. Both parties then began working together towards closing the sale of the Property, including, without limitation, the execution ofan amendment to the Contract (the Contract, as amended will be referred to as the "Amended Contract"), and the deposit by Plaintiff of the required escrow money with an agent of First American Title Company and providing notice of such deposit to P-97 as required by the Amended Contract.(¶¶9-14).The Amended Contract provided, among other things, that it would apply to, be binding upon and enforceable against, and inure to the benefit of the parties and their respective heirs, successors and assigns.  (Comp., Ex. 1, ¶11).

In October 2012, Plaintiff and P-97 orally agreed to the terms of a form of a second amended contract, which would have revised and extended certain of the terms and dates set forth in the Amended Contract, and on October 2, 2012, Plaintiff sent a written second amendment which contained the previously agreed to terms to Alison Cox, a director and authorized agent for CLB(the general partner of P-97) for her signature.  (¶¶15-16).  After sending the proposed second amendment to Ms. Cox for her signature, Ms. Cox confirmed to Plaintiff that she had agreed to the terms of the amendment, but informed Plaintiff that she had been instructed by a **potential** buyer (AMA-4) of a larger parcel of land belonging to P-97 (the "AMA-4 Parcel"), which parcel included the Property subject to the Amended Contract, not to execute the second amendment.  (¶17).

2

Thereafter, on October 5, 2012, AMA-4 entered into a contract with P-97 for the purchase of the AMA-4 Parcel, which included the Property subject to the Amended Contract (the "AMA-4 Contract").  (¶18).**The AMA-4 Contract provided that the sale was subject to the Amended Contract, and pursuant to the AMA-4 Contract, P-97 furnished to the AMA-4 a copy of the Amended Contract such that AMA-4 had actual notice thereof**.  (¶¶19-20).  After the execution of the AMA-4 Contract, AMA-4's managing member, Skobel, himself confirmed to Plaintiff that before AMA-4 entered into the AMA-4 Contract, he had in fact instructed P-97 not to execute any further documents related to the performance of the Amended Contract with Plaintiff because AMA-4 would "have to live by" any agreements between P-97 and Plaintiff.  (¶22).

Subsequent to the execution of the AMA-4 Contract, Defendants AMA-4 and Skobel continuedtheir ongoing pattern of interference with the Amended Contract and the business relationship established between P-97 and Plaintiff prior to AMA-4 purchasing the AMA-4 Parcel.  For instance,Plaintiff alleges that AMA-4 and Skobel coerced and induced P-97 into making unfounded objections -- clearly appearing to be a "setup" for an assertion of breach and/or termination -- to the deposit of the escrow money with an authorized agent for First American and then, after Plaintiff agreed to transfer the location of the escrow money in order to resolve the purported issue, prevented Ms. Cox from executing the new escrow agreement to facilitate the transfer of the escrow money.  (¶¶24-29, 59).  Plaintiff also alleges that AMA-4 and Skobel interfered with the Amended Contract by coercing or inducing P-97 and CLB to breach the Amended Contract by instructing them not to perform, or otherwise preventing them from performing, any of their obligations under the Amended Contract despite having full notice that P-97 and CLB were obligated to do so.  (¶¶29, 59).

SGR/10887592.2

After numerous unsuccessful attempts to communicate with Ms. Cox regarding the Amended Contract, on November 27, 2012, Ms. Cox informed Plaintiff that P-97 had in fact sold the AMA-4 Parcel to AMA-4, and that the Amended Contract had been assigned to AMA-4. (¶29, 31).  Plaintiff, however, was not a party to the alleged assignment between P-97 and AMA-4, andto date (and despite numerous requests) none of the Defendants have provided a copy of the alleged assignment to Plaintiff. (¶31).  Instead, at various times, Skobel, on behalf of AMA-4, has falsely asserted that it had no knowledge of the Amended Contract, and that it had not agreed to or executed any assignments related to the Amended Contract, and at other times asserted that although it had possession of the Amended Contract and full notice of Plaintiff's rights which were superior to AMA-4's in the Property, that AMA-4 would nevertheless not proceed to closing thereunder.  (¶37).

Throughout this time period Plaintiff continued to perform under the Amended Contract and proceed towards a closing,[1] but Defendants continuously failed to perform as required by the Amended Contract, including, without limitation, failing to provide evidence that Defendants own the entire fee simple in the Property and had Marketable Title (as defined in the Amended Contract) to the Property, failing to perform the conditions set forth in Section 8 of the Amended Contract, and refusing to provide other documentation necessary for Plaintiff to proceed to closing on the Amended Contract.  (¶¶32-37).

Based on Defendants AMA-4's and Skobel's tortious interference with, and the refusal of Defendants P-97 and AMA-4 to perform as required by, the Amended Contract, Plaintiff filed its Complaint in this action.As set forth above and in detail in the Complaint,

---

[1] As alleged in the Complaint, based upon the terms of the Amended Contract on November 13, 2013, Plaintiff exercised its right to extend the closing date through and including February 14, 2013, which, as the allegations demonstrate, was long after the Defendants P-97 and AMA-4 breached and repudiated the Amended Contract.

SGR/10887592.2

Plaintiff alleges in Count I that Defendants, P-97 and CLB (its general partner) breached and repudiated the Amended Contract by, among other things, failing or refusing to perform under the Amended Contract, failing or refusing to cooperate with Plaintiff so as to frustrate its performance as required by the Amended Contract, and in that regard failing to provide Plaintiff with documentation needed for Plaintiff to proceed to closing, including steadfastly refusing to furnish a copy of the executed assignment of the Amended Contract to AMA-4. (¶¶32-37,48).

Count I of the Complaint also alleges that Defendant AMA-4, "*as assignee of the Amended Contract or otherwise being legally bound to perform the Amended Contract*," also willfully, wantonly, and in bad faith breached and overtly repudiated its obligations under the Amended Contract and, therefore, is also liable for the relief sought by Plaintiff under the Amended Contract.  (¶¶46, 49-50) (emphasis added).  Importantly, the Complaint makes clear that the uncertainty as to whether the Amended Contract was formally assigned to AMA-4 makes no difference to Plaintiff's claim in Count I, in that it alleges facts pursuant to which AMA-4 is legally bound to perform the seller's obligations under the Amended Contract in any event.(¶¶45, 49).  In essence, the Complaint alleges AMA-4 became liable to perform the obligations of P-97 under the Amended Contract - and liable for the remedies for breach -either by virtue of an assignment of the Amended Contract to AMA-4, or by operation of law because AMA-4 purchased the AMA-4 Parcel subject to the Amended Contract with notice and knowledge of the Amended Contract.  (¶¶45-49).

In Count II Plaintiff re-alleges the breaches and bases for liability set forth in Count I, and asserts that Defendants AMA-4, P-97 and CLB have also breached the implied covenant of good faith and fair dealing required by the Amended Contract based on their conscious,

deliberate, and bad faith actions, and their failure to discharge and overt repudiation of their contractual responsibilities under the Amended Contract.

Count III of the Complaint alleges that Skobel, individually and on behalf of AMA-4, had notice and knowledge of, and tortiously interfered with, the performance of P-97 under the Amended Contract prior to AMA-4 contracting with P-97 to purchase the AMA-4 Parcel, and that he continued his pattern of interference thereafter. (¶¶56-61). Specifically, the Complaint alleges that Skobel intentionally induced or coerced P-97 (and CLB, as general partner) to, among other things: (1) not perform their obligations under the Amended Contract; (2) not execute the orally agreed upon second amendment to the Amended Contract, and (3) make unfounded and wrongful objections and demands related to the deposit of the earnest money by Plaintiff under the Amended Contract, all of which were designed to frustrate Plaintiff's contract rights and facilitate AMA-4 retaining the Property to be sold in the Amended Contract for its own benefit. (¶¶56-61).

Similarly, Count IV alleges that Skobel and AMA-4 knowingly and intentionally interfered with Plaintiff's ongoing advantageous business relationship with P-97 and CLB by, among other things, the conduct described in Count III. (¶¶66-70). Moreover, Counts III and IV allege that Defendants' tortious interference with the Amended Contract and Plaintiff's advantageous business relationship were done intentionally, willfully, wantonly, and with a total disregard for the rights and interests of Plaintiff. (¶¶61, 70).

Finally, Count V, which is brought in the alternative to Counts I and II, seeks specific performance of the Amended Contract by AMA-4 and alleges that, among other things, the Amended Contract was either assigned to AMA-4 or AMA-4 purchased the AMA-4 Parcel with notice and knowledge of the Amended Contract and as a result has become obligated to

SGR/10887592.2

perform under the Amended Contract.(¶¶73-73).   Count V also alleges that AMA-4 has refused to perform under the Amended Contract, wrongfully prevented Plaintiff's performance, refused to convey the Property to Plaintiff and has otherwise repudiated the Amended Contract.  (¶¶75-87).

**MEMORANDUM OF LAW**

**I.**  **Standard of Review**

Pursuant to Rule 8(a)(2), FED. R. CIV. P., a pleading is only required to contain a short and plain statement of the claim showing that the pleader is entitled to relief.  The purpose of a pleading is to give notice, rather than provide the exact details that will ensue at trial.  *See Stewart Title Guaranty Co., v. Title Dynamics*, 2005 WL 2548419; No. 2:04 CV 316, at \*4 (M.D. Fla., Oct. 11, 2005).In deciding a motion to dismiss filed pursuant to Rule 12(b)(6), FED. R. CIV. P., acourt is limited to considering the well-pleaded factual allegations of the complaint, documents central to or referenced in the complaint, and matters judicially noticed.  *See La Grasta v.First Union Sec., Inc.*, 358 F. 3d 840, 845 (11th Cir. 2004).In reviewing a complaint, the court must accept all factual allegations in the complaint as true and take them in the light most favorable to the plaintiff.  *Pielage v. McConnell*, 516 F. 3d 1282, 1284 (11th Cir. 2008).  In sum, a complaint does not need to allege detailed factual allegations, but only sufficient facts to allow the court to draw a reasonable inference that the defendant is liable for the misconduct alleged.*See Scarver v. Lamour*, 2013 WL 1694836; No. 2:12-cv-416-FTM-99DNF, at \*2 (M.D. Fla., April 18, 2013).

In light of the pleading standards required under Rule 8, Defendants' Motion to Dismiss should be denied because the Complaint, when construed in a light most favorable to Plaintiff, unequivocally states well-pleaded claims against Defendants, and Defendants' arguments in

support of their Motion to Dismiss either disregard the clear allegations of the Complaint, are inapplicable, or are inappropriate for consideration on a Motion to Dismiss. Each of Plaintiff's claims and Defendants' arguments will be addressed in turn, below.

**II.    Count I of the Complaint States a Claim for Relief for Breach of Contract**

Defendants have moved the Court to dismiss Count I of the Complaint as to Defendant AMA-4,and argue that the Complaint fails to allege that AMA-4 and Plaintiff entered into a contract, or that the Amended Contract was assigned to AMA-4, such that AMA-4 undertook P-97's obligations under the Amended Contract. Essentially, Defendants' argument is that Plaintiff does not have a claim against Defendant AMA-4 for damages for breach of contract because there is no privity of contract between Plaintiff and AMA-4, and Plaintiff has not alleged an assignment of the Amended Contract to AMA-4.Defendants' Motion to Dismiss should be denied with respect to Count I because Plaintiff has clearly alleged grounds for belief that the Amended Contract was assigned to AMA-4, and thatin any event, Plaintiff has alleged facts which demonstrate that AMA-4 was legally obligated to perform P-97's obligations under the Amended Contract whether a formal assignment exists or not.

As Defendants cite in their Motion to Dismiss, the elements of a breach of contract action are: (1) a valid contract; (2) a material breach; and (3) damages. *Merin Hunter Codman, Inc. v. Wackenhut Corr. Corp.*, 941 So. 2d 396, 398 Fla. 4th DCA 2006).Importantly, however,Florida law provides that a plaintiff may assert a breach of contract claim, and seek the appropriate remedies, against a defendant with whom it is not in privity of contractdespite the absence of a specific assignment of the contract, if the party not in privity of contract purchased from or was otherwise the successor in interest to the party in privity of contract and had actual knowledge of the contract. *SeeMcDonald v. McGowan*, 402 So. 2d 1197, 1200 (Fla. 5thDCA 1981); *see also*

*Kesl, Inc. v. Racquet Club of Deer Creek II Condo., Inc.*, 574 So. 2d 251, 253-54 (Fla. 4thDCA 1991).

In particular, with regard to contracts for the purchase and sale of real property, Florida law provides that a person purchasing real property with notice that the seller had contracted to convey the property to another is obligated to perform the contract in the same manner as the seller would have been required to do had the seller not transferred the legal title. *See McGowan*, 402 So. 2d at 1200.In*McGowan*, a decision directly on point to the instant case, the plaintiff asserted claims for breach of a real estate contract against the defendant, a third-party who purchased the real property from a seller who had previously contracted to sell the same real property to the plaintiff, as well as for thethird-party defendant's tortious interference with the plaintiff's contractual rights. *McGowan*, 402 So. 2d at 1199-1201. The basis for the plaintiff's claims was that the defendant purchased the real property with knowledge of the existence of plaintiff's contract to purchase the same property. *Id.* at 1199. The trial court entered a directed verdict against the plaintiff on both counts and on defendant's counterclaims against the plaintiff for slander of title. Both parties appealed the rulings. *Id.* at 1199.

The appellate court reversed the directed verdict entered against the plaintiff on his claims for breach of contract and tortious interference.*Id.* With regard to the plaintiff's claim for breach of contract,where the remedy of specific performance was sought, the appellate court stated that "[t]he law in this jurisdiction is well established that a person purchasing property with notice that the seller had contracted to convey it to another ***may be compelled to perform the contract in the same manner as the seller would have been required to do, had he not transferred the legal title***." *Id.* at 1200 (*citing Hartford Fire Ins. Co v. Brown*, 160 So. 2d 657 (1935); *Dunson v. Stockton, Whatley, Davin& Co.*, 346 So. 2d 603 (Fla. 1st DCA 1977); *La*

9

*Guardia v. Perez*, 339 So. 2d 308 (Fla. 3d DCA 1976)) (emphasis added).In reversing the directed verdict, the court held that the key issue - whether the defendant had knowledge of sufficient facts to charge him with implied knowledge of the plaintiff's prior contract - was one of fact that should have been determined by the trier of fact.

Similarly, the appellate court in *Kesl* held that a plaintiff had a claim fordamages for breach of contract arising out of an agreement entered into between the plaintiff's predecessor in interest and a third party.  *Kesl*, 574 So. 2d at 253-254.  On appeal, the court rejected the appellee's contention that the plaintiff had no claim.  In pertinent part, the court held:

> Kesl, Inc. claims to be the successor owner of the club property . . .The complaint is silent as to whether there was any, more specific, assignment of the owner's interest in the agreement.  ***However this alone is an insufficient basis for a dismissal***.  The recorded document provides that it is binding on the parties and their successors . . . [i]f appellee has affirmative defenses they may, of course, be raised in the answer.

*Id.* at 254 (emphasis added).

In the present case,Defendants' argument is meritless, as they have either not read or chosen to simply ignorePlaintiff's clearallegations in the Complaint setting forth factsindicating that the Amended Contract was assigned from P-97 to AMA-4.  Specific to Count I, Plaintiff alleges in ¶ 49 that AMA-4, ***as assignee of the Amended Contract*** or otherwise being legally bound to perform the Amended Contract, materially breached and repudiated its obligations under the Amended Contract.  The fact that Plaintiff has also alleged that AMA-4 may be held liable for breach of the Amended Contract by operation of law whether or not the assignment occurreddoes not provide a basis to dismiss the claim because in either event AMA-4 had the same obligations of performance under the Amended Contract, and liability for breach if it failed to do so.  Accordingly, when viewed in a light most favorable to Plaintiff, the allegations in the

SGR/10887592.2

Complaint are sufficient to meet the pleading requirements of Rule 8 and set forth a valid claim for relief against AMA-4 under Florida law for breach of the Amended Contract.

However, assuming *arguendo* that Plaintiff had made no allegations concerning an assignment of the Amended Contract from P-97 to AMA-4, Plaintiff would still have a claim for damages against AMA-4 for its failure to perform pursuant to the Amended Contract, because Plaintiff has alleged that AMA-4 purchased the AMA-4 Parcel from P-97 with notice and knowledge of the Amended Contract. Specifically, the Complaint alleges that on March 2, 2012, Plaintiff and P-97 entered into the Contract for the purchase of the Property (which was subsequently amended in July 2012). The Complaint then alleges that on October 5, 2012, subsequent to the execution of Plaintiff and P-97's Amended Contract, P-97 and AMA-4 entered into a contract to purchase the AMA-4 Parcel, which included the Property subject to the Amended Contract and was expressly subject to the Amended Contract. The Complaint also clearly alleges (and paragraphs 6(d) and 22 of the AMA-4 Contract demonstrate) that AMA-4 had actual knowledge of the existence of the Amended Contract prior to contracting to purchase and actually purchasing the AMA-4 Parcel. Thus, the facts alleged in the Complaint set forth a stronger basis for liability against AMA-4 than the facts in *McGowan*, which the court held were sufficient to present the case to a jury. Accordingly, even without the allegations concerning assignment of the Amended Contract to AMA-4 (which Plaintiff clearly alleged) Plaintiff has set forth sufficient facts to support its claim for breach of contract against AMA-4 in any event.

Additionally, when the Amended Contract attached to the Complaint is considered in connection with the allegations contained in the Complaint, it is clear that Plaintiff has a claim against AMA-4 as the successor property owner of the Property to be sold to Plaintiff under the Amended Contract. The Complaint alleges that when AMA-4 purchased the AMA-4 Parcel,

SGR/10887592.2

AMA-4 expressly took the AMA-4 Parcel subject to the prior existing Amended Contract.Also, the Amended Contract referenced in and attached to the Complaint provides thatthe agreement shall apply to, be binding upon and enforceable against and inure to the benefit of the parties hereto and their respective heirs, successors and assigns.  Therefore, Plaintiff has also alleged sufficient facts to support its claim for breach of contract against AMA-4 as the successor owner of the Property pursuant to the holding in *Kesl*.

Accordingly, Defendants' Motion to Dismiss Count I against AMA-4 is without merit and should be denied.

**III.    Count II of Plaintiff's Complaint States a Claim for Relief for Breach of the Implied Covenant of Good Faith and Fair Dealing**

Under Florida law, the implied covenant of good faith and fair dealing is a part of every contract.  *Cnty., of Brevard v. MiorelliEng'g, Inc.*, 703 So. 2d 1049, 1050 (Fla. 1997).In interpreting a claim for reliefbased on a breach of the duty of good faith and fair dealing, Florida courts have held that the duty is not a stated contractual term andis dependent upon the existence of a breach of an express term of a contract.*See Progressive Am. Ins. Co. v. Rural/Metro Corp. of Fla.*, 994 So. 2d 1202, 1207 (Fla. 5th DCA 2009); *Burger King Corp. v. Weaver*, 169 F. 3d 1310, 1316 (11th Cir. 1999).

In their Motion to Dismiss, Defendants argue that Plaintiff's claim for breach of the implied duties of good faith and fair dealing set forth in Count II should be dismissed because, as set forth in their argument with respect to Count I, Plaintiff has failed to allege the existence of a contract between it and AMA-4 or an assignment of the Amended Contract from P-97 to AMA-4.As fully set forth above, Plaintiff has alleged sufficient facts to bring an action against AMA-4 for breach of the Amended Contract, including alleging that Plaintiff was informed that AMA-4 was assigned the Amended Contract.  Accordingly, Plaintiff has sufficiently alleged the

12

existence of an enforceable contract between AMA-4 and Plaintiff, and numerous actions by AMA-4 which reflect that its conduct was in clear breach of the implied duty of good faith and fair dealing.  Therefore, Defendants' Motion to Dismiss Count II of the Complaint against AMA-4 should also be denied.

**IV.**     **Counts III and IV of the Complaint State Claims for Relief for Tortious Interference with Contract and Tortious Interference with Advantageous Business Relationship**

Defendants argue that Counts III and IV of the Complaint should be dismissed because (1) Defendants' interference with the Amended Contract was privileged; (2) Defendant Skobel is not liable for tortious interference because he was an agent for a party to the contract sued upon; and (3) Plaintiff's allegations of tortious interference are inconsistent with its breach of contract claims.  As Defendants' arguments for dismissal of Counts III and IV are identical and the case law relating to the arguments isalso essentially the same, this response will address Defendants' arguments on Counts III and IV together and in turn.[2]

**A.**     **Defendants' Alleged Privilege Is not a Basis to Dismissa Claim of Tortious Interference and, Alternatively Plaintiff Has Alleged Malice**

Defendants' initial argument wholly lacks merit because the economic interest privilege is a fact-based affirmative defense to a claim for tortious interference.  Here, Plaintiff has clearly alleged that Defendants' actions were improper, unjustified, and were not privileged (*See Comp.* ¶¶59, 60, 66, 67).   With respect to tortious interference claims, Florida law recognizes the

---

[2]  Defendants do not argue that Plaintiff has not alleged the necessary elements to state a claim for relief for tortious interference with contract or tortious interference with advantageous business relationship.  In this regard, the elements of a claim for relief for tortious interference with contract are:  (1) the existence of an enforceable contract; (2) the defendant's knowledge of the contract; (3) an intentional and unjustified interference by the defendant with the plaintiff's rights under the contract, and (4) damages.  *Ace Pro Sound and Recording, LLC v. Albertson*, 512 F. Supp. 2d 1259, 1268 (S.D. Fla. 2007).  Additionally, the elements for a claim for relief for tortious interference with advantageous business relationship are:   (1) the existence of a business relationship; (2) knowledge of the relationship on the part of the defendant; (3) intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship.  *Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985).

SGR/10887592.2

principle that actions taken to safeguard or protect one's financial interestcan be privileged, so long as improper means are not employed. *See Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F. 3d 1290, 1321 (11th Cir. 1998); *McCurdy v. Collis*, 508 So. 2d 380, 384 (Fla. 1st DCA 1987). "In other words, the privilege does not encompass the purposeful causing of a breach of contract." *McCurdy*, 508 So. 2d at 384 (*citing Yoder v. Shell Oil Co.*, 405 So. 2d 743, 744 (Fla. 2d DCA 1981)).

On this issue, Florida federal and state courts have routinely held that the economic interest privilege is not an appropriate basis to dismiss a complaint, but instead, must be alleged as an affirmative defense to the claim. *See Title Dynamics*, 2005 WL 2548419, at *4-5 (M.D. Fla., Oct. 11, 2005); *Law Office of David Stern, P.A. v. SCOR Ins. Corp.*, 354 F. Supp. 2d 1338, 1346 (S.D. Fla. 2005); *Heavener OgierServs., Inc., v. R. W. Fla. Region, Inc.*, 418 So. 2d 1074, 1076-77 (Fla. 5th DCA 1982). Moreover, while Plaintiff contends that the Complaint in this action does not show a basis an economic privilege defense, Florida law provides that even if a complaint does allege facts showing that a defendant may be able to assert the defense of economic privilege, the defense can be countered with a showing of malice. *See Title Dynamics*, 2005 WL 2548419 at *4-5 (M.D. Fla. Oct. 11, 2005).

In the present case, Plaintiff has clearly alleged each element necessary to support claims for tortious interference with contract and tortious interference with an advantageous business relationship against Defendants, including alleging that Defendants' interference was unjustified and improper, and that the wrongful acts began and continued *before*AMA-4 contracted for, and later bought, the Property, and specifically that Defendants' actions were taken without any privilege to do so. Thus, nothing on the face of the Complaint supports Defendants' claim of an economic privilege.Accordingly, based on the foregoing case law and the pleadings

14

herein,Defendants' claim of an alleged and unsupported economic privilege is not an appropriate basis to dismiss Counts III and IV of the Complaint.  If Defendants wish to rely on the economic privilege as a defense, they must assert it as an affirmative defense to the Complaint.

Additionally, to the extent the Court wishes to evaluate Defendants' so-called claim of economic privilege at this stage of the litigation, Plaintiff submits that the allegations in the Complaint and the prevailing case law demonstrate that Defendants' prospective interest in purchasing the AMA-4 Parcel subject to the Amended Contract does not grant them the privilege to coerce P-97 and CLB to breach the Amended Contract.As cited above, Florida case law provides that the economic privilege only applies to action taken by a defendant pursuant to lawful or proper means, which does not include the purposeful causing of a breach of contract.  The *Barco Holdings LLC v. Terminal Inv. Corp.*, case cited by Defendants in their Motion to Dismiss, which notably was an appeal from the trial court's granting of summary judgment, adeptly illustrates this principle.  967 So. 2d 281 (Fla. 3rd DCA 2007).

In *Barco*, a seller ownedreal property that was subject to a lease agreement pursuant to which the lessee had a right of first refusal to purchase the property as well as a separate option to purchase the property at any time for a specified price.  *Id.* at 285.  The owner then entered into an agreement to sell the property to a third party, but just prior to the sale the lessee exercised its option to purchase the property.  *Id.*The third-party then sued the lessee for tortious interferencewith purchase contract by exercising its option at the last minute.  *Id.* at 292.  On appeal, the court affirmed the trial court's entry of summary judgment in favor of the lessee, holding that "the lawful exercise of the purchase option could not constitute interference as a matter of law."  *Id.*

15

In the present case, and in direct contrast to the facts in *Barco*, Plaintiff has alleged that Defendants AMA-4 and Skobel wrongfully, intentionally and without privilege interfered with the Amended Contract **before** AMA-4 entered into a contract to purchase the AMA-4 parcel and prior to the closing pursuant to which AMA-4 became obligated to perform under the Amended Contract. As noted above, for example, the Complaint alleges that Defendants: (1) instructed P-97 and CLB not to perform their obligations under the Amended Contract; (2) coerced or induced P-97 and CLB not to execute the previously agreed upon second amendment to the Amended Contract; and (3) coerced or induced P-97 and CLB to make unfounded objections and wrongful demands to harass the Plaintiff regarding the earnest money deposit required by the terms of the Amended Contract.  Thus, contrary to their argument, it was not Defendants' purchase of the AMA-4 Parcel that is the basis for Plaintiff's tortious interference claims in Counts III and IV, but instead it was their improper and unlawful inducing and coercing of P-97 to breach the Amended Contract prior to AMA-4 even entering into a contract to purchase the AMA-4 Parcel (and continuing until the closing on the AMA-4 Parcel pursuant to which AMA-4 became obligated to perform under the Amended Contract).

Even further, Defendants' claim of an economic privilege as a basis to dismiss the Complaint is meritless because, even if grounds existed to assert the defense in a motion to dismiss (which clearly is not the case) the argument still would not support a dismissal, as Plaintiff has alleged that Defendants' actions were taken with malice. Defendants concede that Florida law provides that the economic privilege may be countered with a showing of malice. *See Title Dynamics*, 2005 WL 2548419 at *4-5 (M.D. Fla. Oct. 11, 2005).  Malice is defined, among other things, as "[t]he intent, without justification of excuse, to commit a wrongful act." *Black's Law Dictionary*, 976 (8th ed. 2004).  In Counts III and IV of the Complaint, Plaintiff alleges that

SGR/10887592.2

"Defendants Skobel and AMA-4, knowingly and intentionally, without justification or privilege, tortiously interfered with the Amended Contract and [Plaintiff's] rights therein," and that they "knowing and intentionally, without justification or privilege, tortiously interfered with [Plaintiff's] advantageous business relationship with P-97 and CLB."(Comp. ¶¶ 60, 66). Thus, Plaintiff clearly has alleged malice.In this regard, Plaintiff notes that Defendants' argument that Plaintiff has failed to allege malice clearly ignores the unambiguous allegations of the Complaint, and is the type of unsupported and ill-founded argument made throughout the Motion to Dismiss.

Accordingly, Defendants' assertions of"economic privilege"do not provide a basis to dismiss Counts III and IV. Any claim of privilege should be asserted as an affirmative defense. Moreover, Counts III and IV clearly allege that Defendants' actions were wrongful and not privileged, and were done maliciously.

**B.     Plaintiff's Tortious Interference claims against Skobel in Counts III and IV Are Proper under Florida Law**

Defendants' next argument is that the tortious interference claims in Counts III and IV of the Complaint should be dismissed against Defendant Skobel because Skobel was a party to the Amended Contract or an agent of a party to the Amended Contract. Again the Defendants' analysis is fatally flawed. Once again, the Defendants have ignored the allegations of the Complaint. The Complaint clearly sets forth that AMA-4 and Skobel were strangers to the Amended Contract when they committed the wrongful acts of tortious interference with the Amended Contract and tortious interference with Plaintiff's advantageous business relationship.

Pursuant to Florida law individual officers and agents of a corporation may be held personally liable for their tortious acts, even if such acts were committed within the scope of their employment or as corporate officers. *First Fin. USA, Inc. v. Steinger*, 760 So. 2d 996, 997-

SGR/10887592.2

98 (Fla. 4th DCA 2000).Additionally, Florida courts have held that a plaintiff may recover against a corporate defendant for its agent's tortious interference with third-party business relationships.  *SeePreferred Care Partners Holding Corp. v. Humana, Inc.*, 2009 WL 982422; No. 08-20424, at * 12 (S.D. Fla. 2009).

As noted, Defendants' argument incorrectly infers that Plaintiff is seeking to hold Defendants liable for tortious interference in Counts III and IV based on their actions after AMA-4 became obligated to perform under the Amended Contract (as Plaintiff alleges) AMA-4 after it purchased the AMA-4 Parcel.  Instead, as set forth above, Counts III and IV allege that Defendants Skobel and AMA-4 wrongfully interfered with the Amended Contract and the advantageous business relationship between Plaintiff and P-97 through the actions of Skobel, prior toAMA-4 entering into the contract to purchase the AMA-4 Parcel(when both AMA-4 and Skobel were strangers to Amended Contract), which wrongful interference continued through AMA-4's eventual purchase of the AMA-4 Parcel.  Pursuant to these factual allegations, both Skobel and AMA-4 may be held liable for Skobel's intentional interference with the Amended Contract and the ongoing business relationship between P-97 and Plaintiff, andDefendants' legal authority and argument on this issueis misplaced.

Defendants' argument on this issue is also inconsistent with their previously asserted defenses to Counts I and II, and its defense to Count V, discussed below.  In their argument for dismissal of Counts I and II of the Complaint, Defendants take the position that the Complaint fails to allege the existence of a valid contract between AMA-4 and Plaintiff, through assignment or otherwise, and therefore Plaintiff has no right to sue Defendant AMA-4 for breach of contract. Now, based on a mistaken understanding of Plaintiff's claims for tortious interference, Defendants seek to take the opposite position – that the Complaint alleges a valid contract

18

between AMA-4 and Plaintiff and, accordingly, Skobel acting as an agent for AMA-4 cannot be held liable for tortious interference with a contract between his principal (AMA-4) and Plaintiff. Defendants should not be permitted to argue for that Counts III and IV of the Complaint should be dismissed because the Complaint alleges that AMA-4 is liable to perform under the Amended Contract, and then that the other Counts should be dismissed because the Complaint does not properly allege that AMA-4 is liable under the Amended Contract.

Clearly, Counts III and IV state proper claims for relief against AMA-4 and Skobel under Florida law.  Therefore, the Court should deny Defendants' Motion to Dismiss with respect to Counts III and IV of the Complaint.

C.   **Plaintiff's Tortious Interference Claims in Counts III and IV Are not Inconsistent with its Breach of Contract Claims**

As fully explained in subsection B, above, Plaintiff's tortious interference claims in Counts III and IV of the Complaint against Defendants AMA-4 and Skobel are not, as Defendants argue, inconsistent with Plaintiff's breach of contract and specific performance claims in Counts I, II and V.  Instead, Counts I, II and V seek to hold Defendant AMA-4 liable for breach of the Amended Contract after AMA-4 closed on the purchase of the AMA-4 Parcel pursuant to which AMA-4 became obligated to perform under the Amended Contract. Separately and distinctly, Counts III and IV seek to hold AMA-4 and Skobel liable for their conduct in causing P-97 to breach, repudiate, or otherwise not perform under the Amended Contract prior to AMA-4 purchasing the AMA-4 Parcel.

Notably, in an analogous situation in *McGowan, supra*, a plaintiff asserted a claim based on breach of contract against a purchaser of real property who purchased the property with knowledge of the plaintiff's prior existing contract for the purchase of the same property, as well as a claim for tortious interference against the defendant arising out of the same transaction.  402

So. 2d at 1201-02.  In *McGowan*, the appellate court reversed the lower court's directed verdict for the defendant/appellee on both counts, holding that both claims were proper, and should have been submitted to a jury.  *Id.*

Therefore, Plaintiff's claims against AMA-4 for breach of the Amended Contract in Counts I, II and V, and against AMA-4 and Skobel for tortious interference in Counts III and IV are consistent with one another and supported by Florida law.  Accordingly, Defendants' Motion to Dismiss Counts III and IV on this basis should also be denied.

V.   **Count V of the Complaint States a Claim for Relief for Specific Performance of the Amended Contract in the Alternative to Count I.**

With respect to Count V, Defendants argue that the claim should be dismissed against AMA-4 because, as with Counts I and II, the Complaint does not allege the existence of a written contract between AMA-4 and Plaintiff or an assignment of the Amended Contract to AMA-4, and as a result thereof, an action for specific performance of the Amended Contract will not lie against AMA-4.[3]  As fully discussed in Section I, above, Plaintiff has alleged sufficient facts to supports its claim against AMA-4 for breach of the Amended Contract.  In fact (and similar to Count I), in ¶ 74 of Count V Plaintiff specifically alleges that P-97 "either assigned the Amended Contract to [AMA-4] or AMA-4 purchased the AMA-4 parcel, which included the Property to be conveyed under the Amended Contract with actual notice and knowledge of the Amended Contract, and as a result has become bound to perform the obligations of the seller thereunder."  Thus, Defendants' argument is without merit and again demonstrates that they have chosen to ignore the clear allegations contained in the Complaint.

---

[3] Defendants also argue that Count V should be dismissed as to Defendant Skobel.  However, Count V only seeks specific performance against AMA-4.  Therefore, this response will only address the validity of Plaintiff's claim against AMA-4.

SGR/10887592.2

Additionally, even if Plaintiff hadn't expressly alleged the assignment, Plaintiff's allegations that in any event AMA-4 purchased the AMA-4 Parcel subject to and with knowledge of the Amended Contract, and as a result has become obligated to perform as the seller thereunder, is sufficient under well-established Florida law for Plaintiff to bring its breach of contract claim against AMA-4.  *See, e.g., McGowan*, 402 So.2d at 1200.

Finally, it is axiomatic that a plaintiff may plead claims in the alternative in a complaint. *See* Rule 8, FED. R. CIV. P.  Thus, Defendants' argument that Plaintiff cannot seek specific performance because it has an adequate remedy at law is not a basis for dismissal of the claim asserted in Count V.

## CONCLUSION

For the foregoing reasons, Plaintiff, Market Development Corporation, respectfully submits that the Court must deny Defendants' Motion to Dismiss in its entirety.

## STATEMENT REGARDING AMENDMENT

Plaintiff submits that Defendants' Motion to Dismiss is without merit in all respects and should be denied.  However, in the event the Court finds any basis to grant the relief sought by Defendants, Plaintiff would request that the Court afford it leave to amend the Complaint pursuant to Rule 15(a), FED. R.CIV. P.

SGR/10887592.2

Respectfully submitted,

**SMITH, GAMBRELL& RUSSELL, LLP**

s/ Jonathon D. Pressley
Dana G. Bradford II
FloridaBar Number 167542
dgbradford@sgrlaw.com
dmsmith@sgrlaw.com
dthall@sgrlaw.com
Jonathon D. Pressley
Florida Bar No. 84579
jpressley@sgrlaw.com
mhowell@sgrlaw.com
50 N. Laura Street, Suite 2600
Jacksonville, FL32202
Telephone:     (904) 598-6100
Facsimile:     (904) 598-6203

*Attorneys for Market Development Corporation*

<u>**Certificate of Service**</u>

I HEREBY CERTIFY that on this 15th day of May, 2013, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

s/ Jonathon D. Pressley
Attorney

SGR/10887592.2